WESTERN UTILITY CONTRACTORS, INC., Appellant (Plaintiff),

v.

The CITY OF CASPER, Wyoming, Appellee (Defendant and Third-Party Plaintiff),

v.

C.E.I., INC., (Third-Party Defendant).

C.E.I., INC., Appellant (Third-Party Defendant),

v.

The CITY OF CASPER, Wyoming, Appellee (Defendant and Third-Party Plaintiff),

Western Utility Contractors, Inc. (Plaintiff).

Nos. 86–26, 86–27.

Supreme Court of Wyoming.

Dec. 31, 1986.

B.J. Baker, of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for Western Utility Contractors, Inc.

G.G. Greenlee, of Murane & Bostwick, Casper, for The City of Casper.

Cameron Walker, of Schwartz, Bon, McCrary & Walker, Casper, for C.E.I., Inc.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This City of Casper, 3,000–foot, $1.5 million, storm-sewer construction project came to litigation for a ten-day trial from a dispute among the contractor, the city, and the engineer as supervisor-designer, about contract specification terminology and claimed inaccuracies in a soils report creating a contractor "extra" claim of $213,933, first disapproved by the engineer, next by the city, and then denied by the trial court, and now affirmed.

*Issues*

*Appellant* (Western Utilities Contractors, Inc., the contractor):

"1. The court disregarded and failed to give effect to the written contract between [appellant] and [appellee]."

2. The trial Court's Finding No. 1, which states: "There was no evidence

that the report was incorrect," is totally contrary to the evidence because all the substantial evidence disclosed that the soils report was incorrect insofar as it indicated where ground water would be encountered. Further, the legal conclusion implied in Finding No. 1 that the plaintiff could not rely on the report but had some duty to obtain more information is contrary to law.

*Appellee* (City of Casper):

1. "Did the District Court err in its findings and judgment below that Appellee did not breach the terms of its contract with Appellant?"

2. The failure of the contractor to comply with provisions of the contract requiring notice of claim constituted waiver.

3. The decision of the trial court was correct in holding, in addition to lack of contractual breach, that the contractor as plaintiff failed to prove damages.

*Cross-appellant* (C.E.I., Inc., the engineer): The district court erred in its failure to enter judgment in favor of third-party defendant C.E.I., Inc. on the third-party complaint of the city requesting indemnity when judgment for the city was granted.

## FACTS

The City of Casper (city) entered into a contract with C.E.I., Inc. (engineer), a municipal facilities engineering firm under which C.E.I. was to design and supervise the construction of a $1.5 million, 3,000-foot storm sewer project. After completing the planning and design, C.E.I. managed the project's public bidding at which Western Utilities Contractors, Inc. (contractor) was the successful low bidder. The bidders relied in part on a soils report prepared for the engineer, which indicated ground water conditions from test borings.

Following completion of the project and receipt of payment under the contract, the contractor filed an additional compensation claim against the city for $213,933. The city impleaded the engineer, claiming indemnity for any damage award which might result from the contractor's complaint. The trial court denied the contractor's claim against the city, and refused to enter judgment on the city's third-party claim against the engineer, ruling that its decision in the first claim rendered the third-party claim moot. The contractor appeals the trial court's denial of its claim in favor of the city, and the engineer appeals the trial court's refusal to rule in its favor on the city's claim for indemnity.

Initial litigation was based on both negligence and contract, but, following the adverse trial court decision, appeal has been taken only on a contractual theory.

### Bedding Material Controversy

Explicit answers in oral argument refined the contested issues which succinctly are whether § 703.16(b) or § 603.14 of a reference-incorporated Specifications for Road & Bridge Construction, Wyoming Highway Department, 1980 ed., apply to the bedding material required in the trench for the large 6' 6" and 7' 6" concrete drain tile underground installation. The contractor complains that the engineer, and consequently the city, applied the wrong requirement, causing substantial time loss and consequent damage in delayed installation, constituting the amount claimed for recovery.

The problem was not material cost, since what the contractor wanted to use, sized gravel (drain rock), was more expensive by the expressed amount of perhaps three times than the sand actually utilized. The claim theory was that the installation was significantly delayed in using the finer sand material in areas where the work was "in the wet," meaning below underground water levels.

Ancillary to the specification controversy was a dispute about how much "in the wet" should have been expected from information supplied by a soils test report obtained pre-bid by the engineer from a third-party testing service that provided a test boring profile. The contractor claimed an indicated total footage of an expected approxi-

mate 500 feet, compared to an actual 1,500 footage. Interpretation of the soils report was also conflicting in trial evidence, as was the water trench footage actually encountered in work construction.

Originally, the pleadings and trial posture raised a separate claim about this wet trench as a compensable "unanticipated condition," but oral appellate argument made clear, as did the trial evidence on proof of damages, that the contended erroneous soils report served only as a factor of the total damage arising from the improper material requirement devolving from the owner's misinterpretation of the job specifications.

Those specifications were designated by the construction contract as incorporated by reference from Specifications for Road & Bridge Construction, supra. The contractor argued that it could use drain rock for the bedding material, and the engineer disagreed and established smaller sized material, including variable substance, as its standard. Additionally, the engineer contended as contract performance requirements that it had agreed to permit the contractor to use material included within the normal criteria of the Casper Board of Public Utilities as "equal or better," which was slightly more coarse but generally about the same as the asserted requirement provided by the Highway specification; and, furthermore, that the contractor was never required to use sand.

The two provisions (differentiated sections) which came to the trial court for review as being the proper contractual criteria are, by the contractor: § 703.16(b):

"(b) Bed course material for culverts, sewer lines, and water lines shall be a porous, free-draining material consisting of sand, gravel, cinders, crushed stone, or other approved free-draining material. This material shall be uniformly graded and of such size that 100 percent of the material will pass through a sieve having 1½ inch (37.5 mm) square openings." (Drain rock) Specifications for Road & Bridge Construction, supra, at 637;

by the city and also the engineer: § 603.04:

"The conduit bedding shall conform to one of the classes described below:

"Class B and Class C Bedding shall consist of placing the conduit in bedding material shaped to fit the bottom of the conduit. The depth of shaping shall be not less than 0.15 of the vertical height of the pipe for Class B Bedding and not less than 0.10 of the vertical height of the pipe for Class C Bedding. Recesses in the trench bottom shall be shaped to accommodate the bell and spigot when such type of conduit is used.

"Class B Bedding material shall consist of a layer of not less than six inches (150 mm) of sand or selected sandy soil, all of which will pass a ⅜ inch (9.5 mm) sieve and not more than ten percent of which will pass a No. 200 (0.075 mm) sieve. Class C Bedding material shall consist of uniformly compacted earth material or undisturbed trench bottom excavated to fit the conduit as provided above." (Soil bedding material) Id. at 447.

Those specifications were part of the agreement for the purpose of ascertaining what kind of bedding was to be used because "reference in a contract to extraneous writings renders them part of the agreement for indicated purposes." *Busch Development, Inc. v. City of Cheyenne,* Wyo., 645 P.2d 65, 70 (1982).

The essential operational claim of the contractor was that drain rock would have expedited dewatering and pipe laying. Responsively, the engineer contended that drain bed coarse material was unsatisfactory unless diked as potentially causing future street settling and pipe damage problems. Extensive testimony on both operational disputes during work progress and contract specification criteria was introduced.[1] The claim in issue is derived

1. The position of the city was stated by recommendation of the engineer in a letter of June 16, 1982:

"Responding to your requests made at our meeting on June 15, 1982, we advise you as follows:

from alleged work-progress delay in inability to use drain rock.

This appeal decision requires a determination whether the trial court was right in accepting the engineer's explanation of applicable specifications for the bedding material. Each litigant produced extensive evidence on his view of which section of the Highway specification applied.

Was this "bed course material" for sewer lines and water lines under § 703.16(b) (drain rock), or "bedding material" under § 603.04 (amorphous mixed material)?

It would be inane for this court to fail to discern the ten-day trial dispute in interpretation or to resolve that dispute now as additional storm sewer installation experts. If the applicable section is clearly determinable from the written document as a matter of law, we find no basis to make that decision differently than did the trial court. If, however, as we anticipate, there really was an ambiguity to be resolved, then we search for substantial evidence to see if support of the court's decision is to be found in the evidence. *Mobil Coal Producing, Inc. v. Parks*, Wyo., 704 P.2d 702 (1985).

The plaintiff contractor called, in person or by deposition, ten witnesses; the city called five; and the engineering firm four (each of whom was separately called by the contractor for the city), so that the testimony of 15 people was introduced at trial, producing a seven-volume, 1,462–page transcript for our review. More than 100 exhibits were introduced, including multiple photographs, a videotape, and a professionally prepared schematic and work schedule time-progress display with overlays.

Principal witnesses with categorically differing testimony on the interpretation issues were Michael Ellis, President of the contractor firm, and Michael Bell, the design and supervisory project engineer, employed by the engineering firm.

Critical and conflicting evidence developed about pre-bid discussions involving the bedding material criteria and about the dispute as later pursued in correspondence and oral communication. Particularly significant was a pre-bid inspection meeting, wherein discussion about the Highway specification provision occurred.

The record before us raises the issue of whether or not the contract is ambiguous. The determination of whether a contract is ambiguous is for the court as a matter of law. *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980).

" * * * An 'ambiguous contract' is one capable of being understood in more ways than one. It is an agreement which is obscure in its meaning because of indefiniteness of expression, or because a double meaning is present." *Bulis v. Wells*, Wyo., 565 P.2d 487, 490 (1977).

None of the parties claimed an ambiguity, as all agreed that the Highway specifications were clear, but disagreed as to which

---

"The bedding material which you have requested (1⅛" uniformly graded rock) may be used provided that compacted clay cut-off dikes are installed at intervals of 25 feet, and that this large rock bedding is enclosed in a filter fabric material such as Typar, all at no additional cost to the City. If this alternate is desired please notify us and we will prepare a change order to this effect; or

"The bedding material specified in the sanitary sewer specifications may be used at no additional cost to the City; or

"The material specified for Class B bedding Paragraph 603.04 of the specifications may, of course, be used.

"Concern regarding the long-term effects of ground water migration and its ability to produce settlement in either the pipe or the overlying pavement prevents acceptance of the large uniformly-graded drain rock, if unprotected.

"We are therefore unable to approve additional time or cost requests claimed for delay due to the bedding material specifications."

The initial position of the contractor was stated in a claim dated January 31, 1983:

"Extra crew hours on City of Casper, Wyoming, Project No. 22–181, Jefferson-Yellowstone Storm Sewer, caused by defective test boring results furnished by City of Casper and by wrongful interpretation of specifications by City of Casper officials. See itemization attached hereto and by this reference, made a part hereof. This claim is submitted under the Wyoming Governmental Claims Act."

section applied to this construction application.

Where a contract is ambiguous, its interpretation is a mixed question of law and fact. *Goodman v. Kelly,* Wyo., 390 P.2d 244, 247 (1964); *Worland School District v. Bowman,* Wyo., 445 P.2d 364, 366 (1968). The legal question is the ambiguity; thereafter, "there exists a question of intent which the trier of fact must resolve." *Goodwin v. Upper Crust of Wyoming, Inc.,* Wyo., 624 P.2d 1192, 1195 (1981). Further, when a contract is ambiguous the court will look to all of the surrounding circumstances and extrinsic evidence introduced in order to ascertain its true meaning. *Rouse v. Munroe,* Wyo., 658 P.2d 74, 78 (1983); *Mountain Fuel Supply Co. v. Central Engineering & Equipment Co.,* Wyo., 611 P.2d 863, 868 (1980); *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* supra.

The trial court, without specifically finding that the contract was ambiguous, conducted an extensive trial at which it examined the surrounding circumstances and reviewed extrinsic evidence in order to ascertain the contract's true meaning. The trial court issued its decision letter, later incorporated in the judgment, containing the following findings and conclusions:

"1. On or about January 11, 1982, plaintiff and defendant entered into a contract to construct a storm sewer. Before bidding, plaintiff examined a soils report with information about potential interference from ground water. There was no evidence that the report was incorrect. If it was incomplete or needed to be updated, plaintiff had the opportunity to obtain more information. It was unreasonable for plaintiff to conclude that ground water would not be a substantial problem. The extra expense, if any, caused to plaintiff by ground water was not unforeseen work.

"2. To dewater the trench, plaintiff proposed laying a very coarse material under the pipe. Plaintiff claims that defendant misrepresented the contract terms and required use of a material which was too sandy for wet conditions.

Defendant did not require use of material as fine as that installed by plaintiff. Plaintiff failed to mitigate its damages, if any. Plaintiff could have used more coarse material with no objection from defendant. Plaintiff's use of a very fine material was its own choice. Any resulting difficulties were not unforeseen work. There was no breach of contract or negligence by defendant.

"3. Plaintiff's alleged damages were not established with a reasonable degree of certainty. Plaintiff claims damages for areas where plaintiff expected to encounter groundwater and for delays upon which claims were made and satisfied by defendant.

"4. Therefore, plaintiff did not prove its allegations by a preponderance of the evidence. Judgment will be entered in favor of defendant, together with court costs."

The contractual right to use drain rock was the pivotal issue and created a factual conflict at trial as a heavy-weight dispute.

After reviewing the record, we see no reason to upset the determinations of the trial court. This court has often stated that we will not substitute our view of the facts for that of the trier of fact, and, a trial court's findings of fact will be set aside only if they are clearly erroneous or contrary to the great weight of evidence. *Walter v. Moore,* Wyo., 700 P.2d 1219, 1222 (1985); *Plains Tire and Battery Co. v. Plains A to Z Tire Co., Inc.,* Wyo., 622 P.2d 917, 920 (1981). We have likewise often stated that when reviewing the sufficiency of the evidence to support the trial court's findings, we are bound to accept the evidence of the prevailing party as true, leaving out of consideration evidence presented in conflict therewith. *Denhert v. Arrow Sprinklers, Inc.,* Wyo., 705 P.2d 846, 851 (1985); *Shanor v. Engineering, Inc. of Wyoming,* Wyo., 705 P.2d 858 (1985); *Walter v. Moore,* supra; *Scott v. Fagan,* Wyo., 684 P.2d 805 (1984).

In this case, the trial court's findings were not very detailed and may be considered conclusory, but we have held that

"[e]ven if there are no specific findings of fact, a judgment carries with it every finding of fact supporting the successful party that 'can be reasonably and fairly drawn from the evidence.'" *Plains Tire and Battery Co. v. Plains A to Z Tire Co., Inc.,* supra, 622 P.2d at 920. See also *Kvenild v. Taylor,* Wyo., 594 P.2d 972, 976 (1979).

 After reviewing the record, we hold that the evidence, when considered in the light most favorable to the city, is sufficient to sustain the trial court's judgment. The trial court's factual determination that the city did not violate the contract in refusing to permit drain rock as trench bedding material was not clearly erroneous or contrary to the great weight of evidence. Both parties presented considerable evidence to support their positions. We find that the trial court had sufficient evidence to rule as it did, and was not clearly wrong. Now, on this review, we will not interpret the contract to require the application of § 703.16(b) of the Specifications for Road & Bridge Construction, supra, as a matter of law, contrary to the material requirement established and enforced by the supervising engineer. *Wangler v. Federer,* Wyo., 714 P.2d 1209 (1986); *Denhert v. Arrow Sprinklers, Inc.,* supra.

*Damages—Waiver—Soils Test*

The city's second defense is failure of proof of damages. After a comprehensive review of the evidence, we could find a factual basis to support the finding of the trial court, but having affirmed the trial court on the issue of breach of contract, review and evaluation of the damage evidence is unnecessary. Likewise, we do not reach the city's contention that the contractor waived his right to claim additional compensation by failing to comply with procedural requirements for processing supplemental claims.

The other issue extensively presented at trial and on appeal is the application of the soils test as a factor of contractual responsibility for the city. We concur with the decision of the trial court, in practical result, that the issue was not separately dispositive. Consequently, our consideration and discussion of these extensively and carefully briefed contentions would now be only academic or potentially determinative in other cases. *Bryant v. Hornbuckle,* Wyo., 728 P.2d 1132 (1986); *Reese v. Dow Chemical Company,* Wyo., 728 P.2d 1118 (1986); *Wallace v. Casper Adjustment Service,* Wyo., 500 P.2d 72, 73 (1972).

 In affirming the judgment of the trial court, we would additionally conclude that the engineering firm, C.E.I., Inc. cannot be liable, and, considering bonding and balance-sheet concerns, an order of dismissal should be entered to document the termination of C.E.I.'s involvement in the litigation.

The judgment is affirmed, except to remand for entry of an order dismissing the third-party complaint.