MILLER LAND & MINERAL COMPA-
NY, a Wyoming corporation,
Appellant (Plaintiff),

v.

STATE HIGHWAY COMMISSION OF
WYOMING, Wyoming Highway De-
partment, State of Wyoming, and Rob-
ert L. Mitchell and Jane G. Mitchell,
husband and wife, Appellees (Defend-
ants).

No. 87–288.

Supreme Court of Wyoming.

July 14, 1988.

William L. Miller of Hursh, Miller &
Fasse, P.C., Riverton, for appellant.

Joseph B. Meyer, Atty. Gen., Peter J.
Mulvaney, Deputy Atty. Gen., and Law-
rence A. Bobbitt, III, Sr. Asst. Atty. Gen.,
for appellees State Highway Com'n of Wy-
oming, Wyoming Highway Dept., and State
of Wyo.

M.L. Barton of Hill, Young & Barton,
Riverton, for appellees Robert L. Mitchell
and Jane G. Mitchell.

Before BROWN, C.J., THOMAS,
CARDINE and MACY, JJ., and
ROONEY, Ret. J.

MACY, Justice.

This is an appeal from a summary judg-
ment granting appellees Robert L. Mitchell
and Jane G. Mitchell title to the gravel in,
on, or under the surface of their lands on
the basis of the finding that gravel is not a
mineral.

We affirm.

Appellant Miller Land & Mineral Compa-
ny raises the following issues:

"A.   Whether the District Court erred
in holding that gravel was not included in
the mineral reservation in the deed which
is the subject of this action, which states:

'Reserving unto Grantor, all mineral[s]
and mineral rights existing under said
above lands and premises or appurte-
nant thereto, together with the right to
enter upon said lands to explore for
and produce the same.'

"B.   Whether the District Court erred
in holding that as a matter of law, in the
context of this case, both from the objec-
tive evidence and the status of gravel
pursuant to custom and usage in the
State of Wyoming, absent specific intent
being expressed in a deed, gravel is not

deemed to be a reserved mineral and is claimed as a part of the surface estate."

The property located west of Crowheart, Wyoming, which was owned by John L. Miller at the time of his death, was sold from his estate to Dale Urbigkit and Patricia Urbigkit. Mr. Miller owned the surface and mineral rights to this property. The deed conveying this property to the Urbigkits contained the following reservation:

"Reserving. unto Grantor, all minerals and mineral rights existing under said above lands and premises or appurtenant thereto, together with the right to enter upon said lands to explore for and produce the same * * *."

All the minerals and mineral rights were conveyed to appellant by an administrator's deed pursuant to an order contained in the decree of distribution entered on April 17, 1981, in the Matter of the Estate of John L. Miller, Deceased.

While the highway department was constructing a section of highway west of Crowheart in 1985 and 1986, the State entered into a materials agreement with the Urbigkits for the purchase of certain materials, including gravel. Title to the property was subsequently transferred from the Urbigkits to the Mitchells, so the State also entered into a materials agreement with the Mitchells. On May 13, 1985, the Urbigkits assigned all their rights in their materials agreement with the State to the Mitchells.

The highway department removed approximately 105,016.6 tons of gravel from below the surface of this property for highway construction use, and the State has paid the Mitchells for this gravel. Through a complaint originating suit filed October 9, 1986, appellant notified the State that it was the owner of the mineral rights for such property, which included the gravel being purchased by the State, and that payment for this gravel should be made to appellant. The court eventually entered summary judgment in favor of appellees, and this appeal was taken.

Appellant first contends that, if the language in the deed does not express a clear intent to reserve gravel under the lands conveyed, it was error to not consider an affidavit showing such intent which supported its motion for summary judgment.

■■■ Our relevant general standards for interpreting a written instrument are that, if it is free from ambiguity, the intention of the parties is to be secured from the words of the instrument, *Farr v. Link*, Wyo., 746 P.2d 431 (1987); *Nelson v. Nelson*, Wyo., 740 P.2d 939 (1987), and that the interpretation of an instrument to determine whether an ambiguity exists is a question of law for the courts to decide. *Western Utility Contractors, Inc. v. City of Casper*, Wyo., 731 P.2d 24 (1986); *State v. Moncrief*, Wyo., 720 P.2d 470 (1986). The courts, however, may augment these general rules by considering pertinent extrinsic factors when interpreting a conveyance of a mineral interest. *Cheyenne Mining and Uranium Company v. Federal Resources Corporation*, Wyo., 694 P.2d 65 (1985).

The courts which have held that the general reservation of "all minerals" is inherently ambiguous have traveled over a long and tortuous path in a complex and hopeless search to discover the particular minerals the parties intended to reserve. The only reliable rule which surfaces from the confusing and inconsistent approaches taken by those courts attempting to ferret out the subjective intent of the parties is that the word "mineral" means what the court says it means. The result is title uncertainty and the need to litigate each general reservation of minerals to determine which minerals it encompasses. *Spurlock v. Santa Fe Pacific Railroad Company*, 143 Ariz. 469, 694 P.2d 299 (1984), cert. denied 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985); Reeves, *The Meaning of the Word "Minerals,"* 54 N.D.L.Rev. 419 (1978).

■■ Although we may consider the extrinsic evidence presented by appellant to support its motion for summary judgment, we see no need to do so. We hold that the mineral reservation "[r]eserving unto Grantor, all minerals and mineral rights existing under said * * * lands" expresses

a clear and unambiguous intent by the grantor to reserve all the minerals, whatever they may be.

▮ We recognize, however, that gravel cannot be reserved in a general mineral reservation unless it is a mineral. The threshold question of law of first impression before this Court therefore is whether or not gravel is a mineral, not whether the grantor intended to reserve gravel.

Appellant has launched a three-pronged attack to support its contention that gravel is a mineral. It reasons that (1) the Ad Valorem Tax Division of the Department of Revenue and Taxation taxes gravel production in the same manner as it does mineral production; (2) the Wyoming legislature has included gravel as part of the definition of a mineral in the Wyoming Environmental Quality Act, § 35–11–103(e)(ii), W.S. 1977; and (3) we should follow the emerging law that gravel is a mineral posited in the United States Supreme Court case of *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 103 S.Ct. 2218, 76 L.Ed.2d 400 (1983).

Appellant has directed our attention to a copy of an unsigned memorandum dated December 29, 1980, from the Ad Valorem Tax Division stating that sand, gravel, and aggregate production is considered mineral production in Wyoming. Appellant concludes that, since the State of Wyoming taxes gravel production in the same manner as it taxes mineral production, gravel is a mineral. This conclusion has no merit whatsoever. Even if this administrative agency has taken the position that gravel is a mineral, we fail to see how its determination in any way can affect the decision of this Court.

Appellant also refers this Court to a section in the Wyoming Environmental Quality Act which includes gravel in the definition of a mineral for reclamation purposes. Appellant argues that "the way in which our legislature views gravel certainly is a reflection of the ordinary citizens' mind and definition of gravel and minerals." We understand this to mean that, if the State of Wyoming considers gravel to be a mineral for reclamation purposes, parties to a conveyance or reservation of "all minerals" should consider gravel as an included mineral. We disagree and do not consider this to be a cogent argument which we are obliged to discuss. *Edwards v. Edwards*, Wyo., 732 P.2d 1068 (1987); *Dawson v. City of Casper*, Wyo., 731 P.2d 1186 (1987).

Additionally, we recognize that, in the case of *Watt v. Western Nuclear, Inc.*, the United States Supreme Court specifically limited its holding to the statutory interpretation of the Stock–Raising Homestead Act of 1916. That court declared that "gravel is a mineral reserved to the United States in lands patented under the SRHA." Id., 103 S.Ct. at 2231. We also agree with the South Dakota Supreme Court when it stated in the case of *Rysavy v. Novotny*, S.D., 401 N.W.2d 540, 542 (1987), that:

"In Watt, the Supreme Court relied heavily upon congressional intent behind the SRHA, and other federal statutes dealing with mineral rights. It is therefore of little help in deciding the present case in which those statutes do not apply."

We further do not subscribe to appellant's thesis that to hold contrary to the Watt case would create confusion. If there is any confusion, we suspect that the Watt case is the culprit as the vast majority of courts have held for various reasons that gravel is not a mineral estate in general private grants or reservations of minerals. Reeves, *The Meaning of the Word "Minerals*," supra at 428.

In spite of all the attention the topic of whether gravel is or is not a mineral has received, many problems remain.[1] The courts which have decided whether gravel is or is not a mineral have relied on various

1. Source materials are in abundance and are too numerous to mention. For the interested reader, a good place to start is with the excellent articles of Lowe, *What Substances Are Minerals?*, 30 Rocky Mtn.Min.L.Inst. 2–1 (1984); Reeves, *The Meaning of the Word "Minerals*," supra; and Comments, *The Meaning of "Minerals" in Grants and Reservations*, 30 Rocky Mtn. L.Rev. 343 (1958).

doctrines,[2] which spawn confusion, inconsistent results, and litigation to resolve questions of fact. Additionally, although legal writers and law professors are quick to point out these problems, they have failed to suggest any alternatives which are faultless. According to Professor John S. Lowe, this dilemma is the "tar baby" of natural resource law. He asserts that the more the courts attack the problems the more stuck they become. Lowe, *What Substances Are Minerals?*, 30 Rocky Mtn. Min.L.Inst. 2–1 (1984).

In *Chittim v. Belle Fourche Bentonite Products Co.*, 60 Wyo. 235, 149 P.2d 142 (1944), this Court quoted with approval two definitions of a "mineral" in arriving at the conclusion that bentonite is a mineral. These definitions are: " 'any form of earth, rock, or metal of greater value while in place than the enclosing country or superficial soil,' " and " '[t]he real test seems to be the character of the deposit as occurring independently of the mere soil, valuable in itself for commercial purposes, that is, near enough to a market to have a value.' " Id. at 146. However, these definitions are more productive of protracted litigation than of justice in arriving at a decision as to whether gravel is a mineral.

Gravel is a mixture of pebbles and broken fragments of rock mixed with finer materials such as sand and clay, 18A Words and Phrases, "Gravel" 444 (1956); Webster's New World Dictionary 610 (2d ed. 1972), and can be found below, above, or in the soil making up the surface of land. While gravel in the technical sense belongs to the mineral kingdom, it usually is not considered a mineral within the ordinary meaning of the word. *Lillington Stone Co. v. Maxwell*, 203 N.C. 151, 165 S.E. 351 (1932).

In an effort to cut the Gordian Knot, we join the vast majority of courts and hold that gravel is not a mineral, and, insofar as gravel is concerned, we adopt what is commonly known as the "ordinary and natural meaning" test articulated in *Heinatz v. Al-*

len, 147 Tex. 512, 217 S.W.2d 994, 997 (1949):

"In our opinion substances such as sand, gravel and limestone are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value, as for example sand that is valuable for making glass and limestone of such quality that it may profitably be manufactured into cement. Such substances, when they are useful only for building and road-making purposes, are not regarded as minerals in the ordinary and generally accepted meaning of the word."

Also see *Moser v. United States Steel Corporation*, Tex., 676 S.W.2d 99 (1984); *Elkhorn City Land Company v. Elkhorn City*, Ky., 459 S.W.2d 762 (1970); and *Little v. Carter*, Ky., 408 S.W.2d 207 (1966).

Although this doctrine may not be free of criticism, we are of the opinion that arriving at a clear rule of law is of more importance than the make of the vehicle used in getting to the destination. The policy considerations in favor of this rule of law are significant in that the rule will minimize title uncertainty and continued litigation to resolve factual issues.

Affirmed.

ROONEY, Ret. J., files a concurring opinion.

THOMAS and CARDINE, JJ., files specially concurring opinions.

ROONEY, Retired Justice, concurring.

In general, I agree with much of that said in the majority opinion, but I cannot accept as proper the basis upon which the result is there reached.

In an admirable effort to set a rule which would "minimize title uncertainty and continued litigation to resolve factual issues," the majority opinion concludes that the reservation of minerals in this deed "expresses a clear and unambiguous intent by the

---

**2.** Surface doctrine, special value, manner of enjoyment, knowledge of existence, popular meaning, commercial value, and scientific meaning.

grantor to reserve all the minerals," and that gravel is not a mineral under the "ordinary and natural meaning" test.[1]

However, the majority holding will not accomplish the stated purpose. The "ordinary and natural meaning" test, adopted by the majority opinion, is subject to too many variations and gives little guidance to practicing lawyers for advice to clients concerning the scope of a grant or reservation of minerals—other than gravel—in conveyances made in years past or in conveyances now under consideration. Nor does the test settle the issue as it pertains to gravel itself. The indefinite nature of the test is manifest in the test itself. The majority opinion quotes the test as set forth in *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994, 997 (1949):

"In our opinion substances such as sand, gravel and limestone are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value * * *."

The task of determining the existence of rare character, exceptional character, or peculiar property giving special value, is as difficult as determining the grantor's intent in using the word "minerals." The fact that this particular substance—gravel—was purchased by the Highway Department for more than a meager sum would indicate it to be of special value.[2]

Additionally, if the use of the word "minerals" in a grant, reservation, or exception in a conveyance "expresses a clear and unambiguous intent by the grantor to reserve all the minerals, whatever they may be," as the majority opinion holds, then, strictly speaking, the conveyance would be of nothing at all—especially in the "ordinary and natural" meaning of the word, since for most people, "minerals" means a substance other than "vegetable" or "ani-

mal." Thus, a conveyance reserving "minerals" would include only that which is other than inert substances, i.e., nothing at all. Obviously such could not be the intent of any of the parties. It exemplifies the ambiguous nature of the word "minerals" when used in a grant, an exception, or reservation in a conveyance.

Although I agree with the majority opinion that there are defects in all of the several approaches or tests used by the courts to determine the meaning of the word "minerals" when used in such context, I believe the least defective, best, and more accurate approach for such purpose is through application of the usual rules of construction and established Wyoming precedent.

In referring to some of the rules of construction, the majority opinion cited *Cheyenne Mining and Uranium Company v. Federal Resources Corporation*, Wyo., 694 P.2d 65 (1985). This court there said:

"We repeated the basic purpose and general rules of contract interpretation in *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980):

"'Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. *Fuchs v. Goe*, 62 Wyo. 134, 163 P.2d 783 (1945); *Shellhart v. Axford*, Wyo., 485 P.2d 1031 (1971); *Oregon Short Line Railroad Company v. Idaho Stockyards Company*, 12 Utah 2d 205, 364 P.2d 826 (1961). If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. *Pilcher v. Hamm*, Wyo., 351 P.2d 1041 (1960); *Fuchs v. Goe*, supra; *Hollabaugh v. Kolbet*, Wyo., 604 P.2d 1359 (1980); *Wyoming Bank and Trust Company v. Waugh*, Wyo.,

---

1. In its footnote 2, the majority opinion lists doctrines or tests used by courts in deciding whether or not gravel is included in a grant, or in a reservation or exception of "minerals" in an instrument.

2. Of note is the fact that the agreement between the Highway Department and Mitchells was for

purchase of "all of the sand, stone, gravel or soil which said Department may remove" for use on a highway construction project. The record does not reflect if payment was made for only gravel, and it cannot be assumed that payment was not also for the other three substances.

606 P.2d 725 (1980). And the contract as a whole should be considered, with each part being read in light of all other parts. *Shepard v. Top Hat Land & Cattle Co.,* Wyo., 560 P.2d 730 (1977); *Rossi v. Percifield,* Wyo., 527 P.2d 819 (1974); *Shellhart v. Axford,* supra; *Quin Blair Enterprises, Inc. v. Julien Construction Company,* Wyo., 597 P.2d 945 (1979). The interpretation and construction is done by the court as a matter of law. *Hollabaugh v. Kolbet,* supra; *Bulis v. Wells,* Wyo., 565 P.2d 487 (1977); *Shepard v. Top Hat Land & Cattle Co.,* supra.'

"A more recent case to the same effect is *Rouse v. Munroe,* Wyo., 658 P.2d 74 (1983).

"In interpreting a conveyance of a mineral interest, the court may augment these general rules by considering pertinent, extrinsic factors. In *Dawson v. Meike,* Wyo., 508 P.2d 15, 18 (1973), we said:
" ' * * * [W]e find no fault with * * * the authority of *Houghton v. Thompson,* 57 Wyo. 196, 115 P.2d 654, that to interpret a contract for the conveyance of an interest in oil and gas the court should consider not only the terms of the writing but also the surrounding circumstances, attendant facts showing the relations of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract.'

"See also *Picard v. Richards,* Wyo., 366 P.2d 119 (1961). The basic purpose of contract interpretation—to determine the intention of the parties—remains the same, however, regardless of the form of the agreement. *Dawson v. Meike,* supra." Id. at 70–71.

The foregoing quotation from *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463 (1980), continued:
"If the contract is ambiguous, resort may be had to extrinsic evidence. *J.W. Denio Milling Co. v. Malin,* 25 Wyo. 143, 165 P. 1113 (1917); *Kilbourne–Park Corporation v. Buckingham,* Wyo., 404 P.2d 244 (1965). An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' *Bulis v. Wells,* supra, 565 P.2d at 490. Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning. *Homestake–Sapin Partners v. United States,* 10th Cir.1967, 375 F.2d 507." Id. at 465.

That the word "minerals" used in the context under consideration here is ambiguous is evidenced by the many source materials and cases cited in the majority opinion concerning its meaning. Used in this context, it is not plain and clear, is not definite in that expressed, and can be understood in more than one way. As noted supra, if given its ordinary and natural meaning in this context, the conveyance would transfer nothing. "Mineral" is defined in Webster's Third International Dictionary, p. 1437 (1971), as

"any of various naturally occurring homogeneous or apparently homogeneous and usu[ally] but not necessarily solid substances (as ore, coal, asbestos, asphalt, borax, clay, fuller's earth, pigments, precious stones, rock phosphate, salt, soapstone, sulphur, building stone, cement rock, peat, sand, gravel, slate, salts extracted from any river, lake, and ocean waters, petroleum, water, natural gas, air, and gases extracted from the air) obtained for man's use usu[ally] from the ground * * * something that is neither animal nor vegetable * * *."

The ambiguity, then, must be resolved under our rules of construction by ascertaining the intention of the parties—primarily that of the grantor in a deed. In doing so, I do not agree with the majority opinion that we can disregard the precedent set by this court in *Chittim v. Belle Fourche Bentonite Products Co.,* 60 Wyo. 235, 149 P.2d 142 (1944). The parties must be taken to have acted with knowledge of, and in accordance with, established law. Their intent at the time of the deed must have been with knowledge of the definition of "minerals" contained in the Chittim

case. In that instance, the mineral in question was bentonite. This court said:

"Bentonite would appear to be a mineral within the definition adopted by the Court in *McCombs v. Stephenson*, 154 Ala. 109, 44 So. 867, and approved by the authors of Morrison's Mining Rights 16th Ed. (1936), p. 250, as follows: 'any form of earth, rock, or metal of greater value while in place than the enclosing country or superficial soil'. And Mr. Lindley, Vol. I, Lindley on Mines, 3rd Ed. (1914), Sec. 93, p. 156, sums up an exhaustive examination of the English and American case law on the subject with the statement:

" 'The real test seems to be the character of the deposit as occurring independently of the mere soil, valuable in itself for commercial purposes, that is, near enough to a market to have a value.' " Id. at 145–46.

Gravel will satisfy this definition *if it has the requisite value.* And there may be instances wherein a reservation of minerals has been made in past years and wherein the requisite value was present and recognized to be so in the minds of the parties. Since the scope of the grant, reservation or exception is that intended by the parties—primarily by the grantor, the requisite value must be determined as of the time of the grant, reservation or exception.

In this case, the mineral reservation or exception was contained in a deed dated December 18, 1978. The requisite value of gravel at that place did not exist at that time. It was not then valuable in itself for commercial purposes. It was not near enough to a market to have a value, and since the purchase by the Highway Department was for more than gravel (see note 2), one can question whether or not it has " 'greater value while in place than the enclosing country or superficial soil' " or whether or not it was " 'occurring independently of the mere soil;' " id. at 146, with reference to its value. It was only when the Highway Department began constructing the road west of Crowheart in 1985 and 1986 that this gravel obtained the requisite value.

Accordingly, I conclude that the reservation or exception of "minerals" in the 1978 deed was not intended by the parties to include gravel.

THOMAS, Justice, specially concurring.

I agree with the result which is reached by the majority opinion in this instance. Had we let the matter rest with simply a statement that gravel is not included when a reservation in a deed alludes to "mineral and mineral rights," I would be satisfied. We go on, however, to adopt what we describe as the "ordinary and natural meaning" test. I am somewhat apprehensive that this does create an avenue for future confusion, at least with respect to mineral substances other than gravel. In this regard, I have a good deal of affinity for Justice Rooney's views.

It seems to me that it is compatible with our precedent to conclude that any mineral substance with inherent value at the time of the conveyance could be recognized as covered by a general reservation. Conversely, those mineral substances that possess only circumstantial value at the time of the conveyance would not be included. I then would define "inherent value" as a value that would result in profit from development whenever the owner chooses to proceed. "Circumstantial value" would be defined as a value that attaches only because of the occurrence of future events, which are not anticipated at the time of the conveyance. In such an instance, development would only be pursued because of a fortuitous event.

I believe that a test such as that would provide a sufficiently objective standard so that any given situation could be resolved by expert testimony. If we are going beyond a holding in this case that gravel is not a mineral, then I would prefer to pursue something beyond the Texas articulation of the "ordinary and natural meaning" test. I am persuaded that such a test will lead to future debate. Probably, any test is susceptible to litigation. My position is that the "inherent value" versus "circumstantial value" test provides a standard

that is objective rather than subjective. The adoption of such a standard would facilitate the resolution of future disputes.

CARDINE, Justice, specially concurring.

I concur in the result only, preferring that we simply hold that gravel is not a mineral. If lands being conveyed are known to be valuable for gravel, such can be retained, if the parties so intend, by specific reservation of gravel in the instrument of conveyance. The same is true if there is no knowledge of the existence of gravel. In the absence of such reservation, gravel is not reserved. The benefit of such a holding is that it is simple, clear, without ambiguity, and easily applied. It would eliminate litigation over this seemingly troublesome question.