RIVER SPRINGS LIMITED LIABILITY
COMPANY, a Wyoming limited liability
company, Appellant, (Plaintiff),

v.

BOARD OF COUNTY COMMISSIONERS
OF the COUNTY OF TETON, in their
capacity as officers of Teton County, a
political subdivision of the State of Wyo-
ming, Appellee (Defendant).

BECHO, INC.; and Corporation of the
Presiding Bishop of the Church of Jesus
Christ of Latter–Day Saints, a Utah cor-
poration sole, Appellants (Petitioners),

v.

BOARD OF COUNTY COMMISSIONERS
OF TETON COUNTY, Wyoming,
Appellee (Respondent).

Nos. 94–23, 94–38.

Supreme Court of Wyoming.

July 19, 1995.

Rehearing Denied Aug. 16, 1995.

William P. Schwartz, Ranck & Schwartz, Jackson, for appellant River Springs Ltd. Liability Co.

Stephen R. Duerr, John L. Gallinger, and Marilyn S. Kite, Holland & Hart, Jackson, for appellants Becho, Inc. and Corp. of the Presiding Bishop of The Church of Jesus Christ of Latter–Day Saints.

Paul O. Vaughn, Teton County Deputy County Atty., Jackson, and Philip White, Jr., Laramie, for appellee Bd. of County Com'rs of Teton County.

Joseph B. Meyer, Atty. Gen.; Mary B. Guthrie, Deputy Atty. Gen.; Larry A. Bobbitt, Sr. Asst. Atty. Gen.; Thomas A. Roan, Sr. Asst. Atty. Gen.; and Mary A. Throne, Asst. Atty. Gen., for amicus curiae State of Wyoming.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

These consolidated cases require us to revisit the definition of minerals in the context of the language in WYO.STAT. § 18–5–201 (1977), which limits the zoning authority of a board of county commissioners so it cannot "prevent any use or occupancy reasonably necessary to the extraction or production of the mineral resources in or under any lands subject thereto." The cases come before us by virtue of questions certified to this court pursuant to WYO.R.APP.P. 11 from the District Court of the Ninth Judicial District in and for Teton County, which we agreed to answer. The primary issue is whether sand, gravel, rock, and limestone are "mineral resources" within the intent of WYO.STAT. § 18–5–201. Collateral issues are raised with respect to preemption by the Wyoming Environmental Quality Act (EQA), WYO.STAT. § 35–11–101 to –1428 (1994) of any regulatory authority by a board of county commis-

sioners or, in the alternative, the extent of the limitation on the authority of the board of county commissioners by the combined thrust of these statutes. We answer the certified questions by holding that sand, gravel, rock, and limestone are not minerals for purposes of WYO.STAT. § 18–5–201. There is no inhibition by that statute upon the authority of the board of county commissioners to limit land use by foreclosing the extraction of sand, gravel, rock, and limestone. The authority of the county to prohibit land use is not preempted but, if extraction is permitted by the board of county commissioners, the authority to regulate the mining process is assigned by statute to the Department of Environmental Quality (DEQ). We remand the cases to the district court for further proceedings in accordance with this opinion.

The certified questions presented by the district court in Case No. 94–23 are:

1. Whether sand, gravel and rock excavated and removed from alluvial deposits are "mineral resources" within the meaning of W.S. 18–5–201 (1977), which states in pertinent part that "no zoning resolution or plan shall prevent any use or occupancy reasonably necessary to the extraction or production of the *mineral resources* in or under any lands subject thereto." (Emphasis supplied).

2. Whether, W.S. § 18–5–201 (1977) and/or the Wyoming Environmental Quality Act, W.S. § 35–11–101 et. seq., preempt or otherwise constrain a Board of County Commissioners' zoning authority *to prohibit* mineral extraction and production activities.

3. Whether, W.S. § 18–5–201 (1977) and/or the Wyoming Environmental Quality Act, W.S. § 35–11–101 et. seq., preempt or otherwise constrain a Board of County Commissioners' zoning authority *to regulate* the aforementioned activities, and if so, the extent of that preemption or limitation.

The certified questions presented by the district court in Case No. 94–38 are:

1. Whether limestone material, extracted for use as gravel products for road base purposes and riprap, constitutes "mineral

resources" within the meaning of § 18–5–201 W.S. (1977), which states in pertinent part that "no zoning resolution or plan shall prevent any use or occupancy reasonably necessary to the extraction or production of the *mineral resources* in or under any lands subject thereto?" (emphasis supplied)

2. If the material constitutes "mineral resources," whether W.S. § 18–5–201(1977) preempts or otherwise constrains a board of county commissioners zoning authority to *regulate* the aforementioned activities and, if so, the extent of that preemption or limitation?

All the parties are in accord that the issues before the court are captured in the certified questions in the two cases.[1] We answer the certified questions in Case No. 94–23 as follows:

1. No.

2. Yes, assuming that the extraction and production activities are accomplished for **minerals.**

3. Assuming that the activities relate to **minerals,** the board of county commissioners cannot prohibit those activities, but it can regulate such activities so long as they are not regulated under the Wyoming Environmental Quality Act, Wyo.Stat. § 35–11–101 to –1428 (July 1994).

We answer the certified questions in Case No. 94–38 as follows:

1. No.

2. Assuming the material constitutes minerals, the board of county commissioners cannot prohibit the extraction or production of the material, but it can regulate such activities so long as they are not regulated under the Wyoming Environmental Quality Act, Wyo.Stat. § 35–11–101 to –1428 (July 1994).

In October of 1992, River Springs Limited Liability Company (River Springs) acquired fifty-eight acres of unimproved property in Teton County. Teton County previously had zoned this tract as a Residential–Agricultural 3 use in its Teton County Comprehensive Plan and Implementation Program (the Plan). The Plan was adopted on December 6, 1977, and it became effective on January 1, 1978. The tract of land on which River Springs wants to conduct its operations currently is platted for a three-lot residential subdivision, and it is bounded by the Snake River, a residential area, and two state highways.

In December of 1992, River Springs filed an application with Teton County for a Conditional Use Permit (CUP), seeking to excavate alluvial deposits from the site, to conduct processing activities to render those materials usable for commercial purposes, and to stockpile the processed materials for future use. Specifically, River Springs asked to screen the excavated materials to separate out usable rock, sand, and gravel; wash the excavated materials to clean them of dirt and mud; crush the aggregate and rock into smaller usable aggregate and gravel; and mix the aggregate and gravel with hot tar to create asphalt. The application by River Springs was submitted because the Plan prohibits mining activities unless a CUP is granted by the Board of County Commissioners of Teton County (Board). River Springs submitted additional documentation consisting of a traffic analysis, air quality study, alternative site analysis, material cost analysis, drainage calculations, noise analysis, wildlife assessment, visual impact analysis, wetlands study, and miscellaneous other materials at the time it submitted its application for a CUP. On January 5, 1994, the Board officially denied the application by River Springs for a CUP.

1. The Brief of Appellant River Springs Limited Liability Company in Case No. 94–23 recites the certified questions in that case in its Statement of the Issues. In Case No. 94–38, the Brief of Appellant Becho, Inc. and Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints repeats the certified questions in that case as its Statement of the Issues Presented for Review. In the Answer Brief of Appel-

lee Teton County Board of County Commissioners, filed in both cases, the Statement of Issues is: "The issues are set forth in the trial court's certified question orders." Finally, in the Amicus Curiae Brief of State of Wyoming, under the Statement of the Issues, it is said: "The issues presented are the questions that were certified from the district court by the Honorable Elizabeth Kail, pursuant to Rule 11.03, W.R.A.P."

In the meantime, on August 18, 1993, the DEQ granted a permit to River Springs to operate a limited rock, sand, and gravel mining operation on its property. In addition, River Springs obtained from the DEQ permits to conduct screening, washing, and crushing operations as well as production of asphalt. At the time it sought declaratory relief from the district court, River Springs was engaged in intermittent screening and washing activities on its property and desired to initiate crushing operations and the production of asphalt with its equipment. The Board, on September 22, 1993, demanded River Springs cease and desist its activities because it did not have a CUP to conduct them. The Board asserted River Springs is proscribed from conducting these activities absent its consent in the form of a CUP in spite of any permits issued by the DEQ. River Springs commenced its action for a declaratory judgment on October 4, 1993.

Becho, Inc. and The Church of Jesus Christ of Latter–Day Saints (Becho) sought review of the action of the Board in denying a CUP. Becho had sought a CUP pertaining to a limestone quarry known as the Fox Creek Quarry, which had been opened in 1949 and operated for various purposes since that time. The quarry produced limestone which was used for sugar beet refining until 1975. In 1975, the DEQ issued a full mining permit to the quarry pursuant to the EQA. About 1977 or 1978, the use of limestone from the quarry for sugar beet refining ended and, from 1979 through 1988, previously quarried limestone was removed for use in road base and construction. In addition, reclamation operations were undertaken. From 1988 until 1993, only small quantities of previously quarried limestone were removed, and there was virtually no activity at the quarry.

Even though DEQ had issued a full mining permit in 1975, it has taken the position that any further extraction, mining, processing, or reclamation activities will require a new or revised permit. An application for a revised permit was being processed at the time the application was made to the Board. Becho now has entered into a contract with the Church of Jesus Christ of Latter–Day Saints to extract and process limestone from this quarry, including gravel products for road base and riprap.[2]

The Board has asserted that renewed mining activities at the quarry can be pursued only upon the issuance of a CUP or, if the Board accepts the use as a "grandfathered" use. With respect to this as a "grandfathered" use, the Board's position is that the use must not only have existed prior to the adoption of the zoning ordinance, but it must have been continued without interruption since its inception. On July 20, 1993, the Board decided the Becho quarry was not a "grandfathered" nonconforming use because it had been substantially dormant from 1988 to 1993. The Board, therefore, insisted that Becho comply with the CUP requirements of the Plan, despite the issuance of a mining permit by the DEQ in 1975. Becho sought judicial review of the Board's decision in the district court.

The first certified question in both cases raises the question of whether gravel, sand, rock, and limestone are to be considered minerals for purposes of the application of WYO.STAT. § 18–5–201. The statute grants zoning authority to each board of county commissioners, and it provides:

To promote the public health, safety, morals and general welfare of the county, each board of county commissioners may regulate and restrict the location and use of buildings and structures and the use, condition of use or occupancy of lands for residence, recreation, agriculture, industry, commerce, public use and other purposes in the unincorporated area of the county. However, nothing in W.S. 18–5–201 through 18–5–207 shall be construed to contravene any zoning authority of any incorporated city or town **and no zoning resolution or plan shall prevent any use or occupancy reasonably necessary to the extraction or production of the min-**

---

2. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1961 (1993) defines "riprap" as 1: a foundation or sustaining wall of stones thrown together without order (as in deep water, on a soft bottom, or on an embankment slope to prevent erosion) 2: stone used for riprap.

eral resources in or under any lands subject thereto.

WYO.STAT. § 18–5–201 (1977) (emphasis added).

We understand the thrust of this statute to be that a board of county commissioners cannot inhibit the extraction or production of mineral resources in or under any lands otherwise subject to zoning.

In 1944, this court first considered the criteria for determining what is or is not a mineral. In *Chittim v. Belle Fourche Bentonite Products Co.*, 60 Wyo. 235, 250, 149 P.2d 142, 145–46 (1944), we said:

> Bentonite would appear to be a mineral within the definition adopted by the Court in McCombs v. Stephenson, 154 Ala. 109, 44 So. 867, and approved by the authors of Morrison's Mining Rights 16th Ed. (1936) p. 250, as follows: "any form of earth, rock, or metal of greater value while in place than the enclosing country or superficial soil". And Mr. Lindley, Vol. I, Lindley on Mines, 3rd Ed. (1914), Sec. 93, p. 156, sums up an exhaustive examination of the English and American case law on the subject with the statement:
>
> > "The real test seems to be the character of the deposit as occurring independently of the mere soil, valuable in itself for commercial purposes, that is, near enough to a market to have a value."

More than forty years later, we specifically addressed the question of whether gravel was a mineral. *Miller Land & Mineral v. Highway Comm'n*, 757 P.2d 1001 (Wyo.1988). We expressly overruled the test adopted in *Chittim*, and we stated with respect to it:

> These definitions are more productive of protracted litigation than of justice in arriving at a decision as to whether gravel is a mineral.

*Miller Land & Mineral*, 757 P.2d at 1004. Having disavowed the *Chittim* criteria, we then adopted a different test, saying:

> In an effort to cut the Gordian Knot, we join the vast majority of courts and hold that gravel is not a mineral, and, insofar as gravel is concerned, we adopt what is commonly known as the "ordinary and natural meaning" test articulated in *Heinatz v.*

*Allen*, 147 Tex. 512, 217 S.W.2d 994, 997 (1949):

> "In our opinion substances such as **sand, gravel and limestone** are not minerals within the ordinary and natural meaning of the word unless they are rare and exceptional in character or possess a peculiar property giving them special value, as for example sand that is valuable for making glass and limestone of such quality that it may profitably be manufactured into cement. **Such substances, when they are useful only for building and road-making purposes, are not regarded as minerals** in the ordinary and generally accepted meaning of the word."

*Miller Land & Mineral*, 757 P.2d at 1004 (emphasis added). *See also Farley v. Booth Bros. Land and Livestock Co.*, 890 P.2d 377 (Mont.1995) (holding scoria is not a mineral for purposes of mineral reservation).

■ In answering these certified questions, we have not been persuaded to depart from the ordinary and natural meaning test. Neither River Springs nor Becho asserts that the sand, gravel, rock, or limestone being excavated is intended for any other purpose than that related to "road-making." River Springs, in its brief, expressly articulated the processing activities that it wishes to conduct:

> (i) screening the excavated materials to separate usable rock, sand and gravel products, (ii) washing the excavated materials with water to remove dirt and mud, (iii) crushing the aggregate and rock into smaller usable aggregate and gravel products and (iv) mixing aggregate and gravel with hot tar to **create asphalt.** (Emphasis added.)

The first certified question in the Becho case captures the intended use for road base purposes and riprap. It is clear, in considering these certified questions, we are contemplating sand, gravel, rock, and limestone for some use other than one that would make them "rare and exceptional in character or possess a peculiar property giving them special value." We hold that Becho's limestone and other products and River Springs' sand,

gravel, and rock are not "minerals" within the context of Wyo.Stat. § 18–5–201.

■ If these are not minerals, then we are satisfied Teton County and all the Wyoming counties are free to apply their zoning and planning authority under Wyo.Stat. § 18–5–201 to "regulate and restrict the location and use of buildings and structures and the use, condition of use or occupancy of lands for residence, recreation, agriculture, industry, commerce, public use and other purposes in the unincorporated area of a county." The activities River Springs and Becho contemplate are industrial, or possibly commercial, and the counties have clear authority to apply their zoning plans in a way that would inhibit such activities. *See Croxton v. Bd. of County Comm'rs of Natrona County,* 644 P.2d 780 (Wyo.1982). Counties should have, and do have, broad authority to require compliance with zoning provisions in their efforts to promote orderly development of unincorporated areas. *See Snake River Venture v. Bd. of County Comm'rs of Teton County,* 616 P.2d 744 (Wyo.1980).

There are limits, however, upon the zoning powers of a county. It cannot rezone for a higher use to cut off an existing nonconforming use. Wyo.Stat. § 18–5–207 (1977). Similarly, it cannot regulate a previously permitted use. In such an instance, the permitted use, in effect, would be "grandfathered," just as though it had been in existence upon the adoption of the zoning provision. With respect to a preexisting use, whether antedating the Plan adopted in Teton County or existing at the time of a change in zoning, the county could not insist upon a CUP, nor could it prohibit the use.

In denying Becho had a "grandfathered" use, the Board contended that not only must such a use have been a preexisting use, but it had to have been maintained in continuous operation since its inception. The Board concluded Becho's quarry operations had been "substantially dormant" from 1988 until 1993. The essence of the Board's position was that the Becho use had been abandoned. This decision is not justified by any definition of a preexisting use in the Plan because none appears. The Board apparently concluded Becho's operation was not a "grandfathered"

use based only upon its decision that the use had been abandoned.

Without any extended discussion of the concept of a "grandfathered" use, we have recognized that principle in *Rogers v. City of Cheyenne,* 747 P.2d 1137 (Wyo.1987), *appeal dismissed,* 485 U.S. 1017, 108 S.Ct. 1568, 99 L.Ed.2d 884 (1988), and *Snake River Venture.* The concept of a "grandfathered" use which we have acknowledged does not substantially depart from that of other jurisdictions. The Supreme Court of West Virginia has articulated this definition:

> A non-conforming use is a use which, although it does not conform with existing zoning regulations, existed **lawfully** prior to the enactment of the zoning regulations. These uses are permitted to continue, although technically in violation of the current zoning regulations, until they are **abandoned.** An exception of this kind is commonly referred to as a "grandfather" exception.

*Longwell v. Hodge,* 171 W.Va. 45, 47, 297 S.E.2d 820, 822 n. 1 (1982) (emphasis added). This definition was reaffirmed by that court in *McFillan v. Berkeley County Planning Comm'n,* 190 W.Va. 458, 438 S.E.2d 801, 806 (1993). *See also* the cases cited in 83 Am. Jur.2d *Zoning & Planning* § 624, at 520 (1992).

The Illinois Court of Appeals recently held a stone quarry which had been operated for seventy years was a lawful use. The court stated:

> Since the quarry was in operation prior to the inception of the * * * zoning ordinance, it is permitted as a preexisting use under the ordinance and operates as a legal nonconforming use.

*County of Du Page v. K–Five Const. Corp.,* 267 Ill.App.3d 266, 204 Ill.Dec. 702, 703, 642 N.E.2d 164, 165 (Ill.Ct.App.1994).

In addressing the proposition of abandonment, that court said this:

> A claim of abandonment of a nonconforming use must be shown by more than a **mere cessation of use;** such a claim also requires that an **intent to abandon the use** be demonstrated.

*County of Du Page,* 204 Ill.Dec. at 707, 642 N.E.2d at 168 (citations omitted, emphasis added).

The zoning provision provided for abandonment if the nonconforming use was discontinued for a period of twelve consecutive months. The provision, in effect, justified the court in finding a presumed intent to abandon if the circumstances continued for a period of twelve consecutive months. In applying the concept of abandonment, the court ruled a nonconforming use could not be legally resumed if the premises become vacant or remain unoccupied or not used for a continuous period of one year.

These definitions and the rationale supporting them are persuasive. Becho's limestone quarry was opened in 1949 and had been in existence almost thirty years prior to implementation of the Plan in 1978. It was a lawful, nonconforming use. The reliance of the Board on the proposition that the quarry had been substantially dormant, even if correct, does not constitute a cessation of use. It is uncontroverted that some activity, although minimal, was taking place at the quarry during the years 1988 through 1993.

■ If we look for an intention to abandon in accordance with the view of the Illinois Court of Appeals, we cannot identify such an intention. The quarry was actively operated, even though at a reduced level of activity, from 1949 until 1993. This does not evidence an intention to abandon the operation. There were continuing efforts to renew the mining permit with the DEQ. Furthermore, the EQA addresses abandonment. WYO. STAT. § 35–11–401(e) (1994) provides, in pertinent part:

> (viii) After the mining operations have ceased or within thirty (30) days after abandonment of the mining operation, the operator shall notify the administrator of such fact and commence reclamation and restoration in compliance with the rules and regulations of the land quality division of the department of environmental quality. The rules and regulations for reclamation shall at all times be reasonable; and
>
> (ix) Immediate reclamation will not be required if the landowner advises the department in writing of his intent to further

utilize the product of the mine, and if he assumes the obligation of reclamation.

Becho took no affirmative steps to reclaim and restore in accordance with this statute and the rules and regulations of the DEQ. Instead, by applying for renewal of a mining permit, Becho advised the DEQ of its intent to further utilize the product of the quarry.

The record does not support the ruling of the Board that Becho's nonconforming use had been abandoned. We hold it was a lawful "grandfathered" use, and the Board is not justified in requiring Becho to seek either a variance or a CUP. Becho's continued excavation, extraction, production, and processing activities will be regulated by the DEQ under the EQA.

■ With respect to preemption, we are satisfied the regulation of Becho's quarry operations is not preempted by the state pursuant to the authority provided by the EQA. Our decision in this regard is informed by *K N Energy, Inc. v. City of Casper,* 755 P.2d 207 (Wyo.1988), in which we observed that, since conflict between sovereign powers reserved to the state or granted to municipalities was possible, the doctrine of preemption had no application. This conclusion was premised upon the proposition that a municipality has no sovereign power other than that granted by the legislature. This proposition pertains equally to a county. *Dunnegan v. Laramie County Comm'rs,* 852 P.2d 1138 (Wyo.1993). In this situation, our task is to harmonize the several statutory provisions and endeavor to afford legitimate effect to all of them; we have no occasion to invoke the doctrine of preemption.

In adopting the EQA, the legislature explicitly and specifically has granted the authority to prohibit and regulate mining activities to the DEQ. As discussed above, if the county zoning forecloses activities the DEQ otherwise would regulate, there can be no excavation, extraction, production, or processing of sand, gravel, rock, or limestone. If the zoning regulations cannot or do not inhibit these activities, however, then the regulation of those activities is accomplished by the DEQ. The authority of Teton County

is limited by the authority granted to DEQ by the language of the EQA.

The statutory scheme is exhaustive in its requirements relating to the extraction and production of "minerals." The minerals within the purview of the regulatory authority of the DEQ are specifically listed:

> "Minerals" means coal, clay, stone, **sand, gravel,** bentonite, scoria, **rock,** pumice, **limestone,** ballast rock, uranium, gypsum, feldspar, copper ore, iron ore, oil shale, trona, and any other material removed from the earth for reuse or further processing * * *.

WYO.STAT. § 35–11–103(e)(ii) (1994) (emphasis added).[3]

The pervasiveness of the DEQ's authority is demonstrated by a specific exclusion from compliance with the provisions of the EQA. The provisions of the EQA do not apply to:

> The extraction of sand, gravel, dirt, scoria, limestone, dolomite, shale, ballast or feldspar by a landowner for his own noncommercial use from land owned or leased by him * * *.

WYO.STAT. § 35–11–401(e)(iii) (1994).

We are satisfied the EQA is sufficiently broad in this area to control the regulation of the removal of the identified minerals from the earth for reuse or further processing. It follows that the Board has no authority to regulate Becho's activity.

The same conclusion is not applicable to River Springs, which commenced its activities after implementation of the Plan in 1978. It applied for a CUP in December of 1992, with full knowledge that its site was zoned for residential and agricultural purposes. There is no legal compulsion with respect to the issuance of a CUP for commercial sand, gravel, and rock quarrying by Teton County in an area known to be zoned for residential and agricultural purposes.

In this instance, the regulation by the DEQ has a somewhat limited scope. It is provided in WYO.STAT. § 35–11–401(e)(vi) (1994) that:

> Surface mining operations, whether commercial or noncommercial, for the removal of sand, gravel, scoria, limestone, dolomite, shale, ballast or feldspar from an area of ten (10) acres or less of affected land if the operator has written permission for the operation from the owner and lessee, if any, of the surface; provided that the operator shall notify the land quality division of the department of environmental quality of the location of the land to be mined before commencing operations * * *.

The record discloses River Springs had sought such an exclusion from regulation by the DEQ. The significant conclusion is that, if the state has the authority to regulate, but excludes certain instances from its regulation, the local authority may invoke its regulatory power. We recognize the authority of the Board to regulate these activities so long as regulation by the county does not conflict with a regulation by the state.

Under the circumstances, River Springs proceeded at its own risk. The Plan was valid as applied to River Springs, and the issuance of a limited mining permit by the DEQ manifests a decision not to exercise state regulatory authority. The Board considered the application by River Springs for a CUP and denied it. That action constitutes a decision to prohibit the use sought by River Springs because that use was not permissible under the Plan.

The answers to the certified questions result in this summary of our holdings. Sand, gravel, rock, and limestone are not minerals for purposes of the application of WYO.STAT. § 18–5–201. A county can prohibit the extraction or processing of sand, gravel, rock, and limestone pursuant to its zoning authori-

---

3. The fact that the legislature has included sand, gravel, rock, and limestone in the definition of minerals subject to regulatory authority does not necessarily make them minerals for other purposes. *Miller Land & Mineral v. Highway Comm'n,* 757 P.2d 1001 (Wyo.1988). As we stated, we do not consider it a cogent argument that gravel must be a "mineral" because the Wyoming legislature included gravel in the definition of minerals for purposes of reclamation. *Miller Land & Mineral,* 757 P.2d at 1003. Instead, the list articulated in WYO.STAT. § 35–11–103(e)(ii) (1994) manifests a legislative intent that the DEQ should control the removal of materials such as this from the earth in order to protect all aspects of Wyoming's environment, including the air, the water, and the land.

ty, but a "grandfathered" use cannot be prohibited. If the county permits the extraction, production, or processing of sand, gravel, rock, or limestone, or must do so because the use was a preexisting use, then regulation of those activities is accomplished under the EQA by the DEQ. If, however, the DEQ, pursuant to an exception in the statute, does not regulate those activities, they may be regulated by the county in a way that does not conflict with state regulation.

These cases are remanded for further proceedings in accordance with this opinion.