2002 WY 11

**SNAKE RIVER BREWING COMPANY, INC., a Wyoming corporation, Appellant (Defendant),**

v.

**The TOWN OF JACKSON, Wyoming, a municipal corporation, Appellee (Plaintiff).**

No. 00–298.

Supreme Court of Wyoming.

Jan. 29, 2002.

Representing Appellant: John L. Gallinger, P.C., and Paula A. Fleck of Holland & Hart, LLP, Jackson, WY.

Representing Appellee: Daniel M. Hesse, Jackson, WY.

Before LEHMAN, C.J., and GOLDEN, HILL, and VOIGT, JJ., and DAN SPANGLER, District Judge (Ret.).

VOIGT, Justice.

[¶ 1] In 1993, Snake River Brewing Company, Inc. (Snake River) obtained from the Town of Jackson (the Town) a building permit for a restaurant and micro-brewery. Snake River then invested approximately $1,768,000.00 in the project. The zoning ordinances in effect at the time allowed Snake River to choose from three methods of providing patron parking: on-site, off-site, and fee in-lieu-of parking. Snake River chose a combination of on-site parking and off-site leased parking. The Town approved this arrangement. In 1995, the Town amended its zoning ordinances so that Snake River's property was no longer in the area approved for payment of a fee in-lieu-of parking. In 1996, the Town approved an expansion of Snake River's project, and Snake River eventually invested another $1,000,000.00 or so in the business. In 1998, Snake River's parking lease became, in its opinion, cost-prohibitive, so it searched for other alternatives, including paying the fee in-lieu-of parking. The Town has taken the position that Snake River abandoned the fee in-lieu-of parking choice by not adopting it initially in 1993, or within twelve months of issuance of the building permit, and that Snake River has now abandoned the off-site choice by not renewing its parking lease for twelve months.

[¶ 2] Snake River has appealed the district court's order granting summary judgment to the Town in a declaratory judgment action. Finding that summary judgment should have been granted to Snake River, rather than the Town, we reverse.

## ISSUES

[¶ 3] The parties identified the interrelated issues in terms of non-conforming uses and abandonment. We will restate the determinative issues as follows:

1.  As part of a non-conforming use, did Snake River have a vested right to pay a fee in-lieu-of providing off street parking for its restaurant and micro-brewery?

2.  If Snake River did have such a right, was that right abandoned?

3.  Is the application of the Town's present parking regulations to Snake River's property a reasonable exercise of municipal police power?

## LEGAL CONTEXT

SUMMARY JUDGMENT

[¶ 4] Our standard for review of summary judgments is well established:

Summary judgment motions are determined under the following language from W.R.C.P. 56(c):

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The purpose of summary judgment is to dispose of suits before trial that present no genuine issue of material fact. *Moore v. Kiljander*, 604 P.2d 204, 207 (Wyo. 1979). Summary judgment is a drastic remedy designed to pierce the formal allegations and reach the merits of the controversy, but only where no genuine issue of material fact is present. *Weaver v. Blue Cross–Blue Shield of Wyoming*, 609 P.2d 984, 986 (Wyo.1980). A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Schuler v. Community First Nat. Bank*, 999 P.2d 1303, 1304 (Wyo.2000). The summary judgment movant has the initial burden of establishing by admissible evidence a *prima facie* case; once this is accomplished, the burden shifts and the opposing party must present specific facts

showing that there is a genuine issue of material fact. *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987); *Gennings v. First Nat. Bank of Thermopolis*, 654 P.2d 154, 156 (Wyo. 1982).

This Court reviews a summary judgment in the same light as the district court, using the same materials and following the same standards. *Unicorn Drilling, Inc. v. Heart Mountain Irr. Dist.*, 3 P.3d 857, 860 (Wyo.2000) (*quoting Gray v. Norwest Bank Wyoming, N.A.*, 984 P.2d 1088, 1091 (Wyo.1999)). The record is reviewed, however, from the vantage point most favorable to the party who opposed the motion, and this Court will give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Garcia v. Lawson*, 928 P.2d 1164, 1166 (Wyo.1996). Mere inferences, conclusions, and assertions are not sufficient to defeat summary judgment. *McClellan v. Brittain*, 826 P.2d 245, 247 (Wyo.1992); *Mayflower Restaurant Co. v. Griego*, 741 P.2d 1106, 1113 (Wyo.1987) (*quoting Stundon v. Sterling*, 736 P.2d 317, 318 (Wyo.1987)); *Blackmore v. Davis Oil Co.*, 671 P.2d 334, 336–37 (Wyo.1983) (*quoting Gennings*, 654 P.2d at 155).

*Garnett v. Coyle*, 2001 WY 94, ¶¶ 3–5, 33 P.3d 114, 116–17 (Wyo.2001). The fact that both parties have moved for summary judgment does not mean there are no genuine issues of material fact. The court must still make that determination. *Seay v. Vialpando*, 567 P.2d 285, 287 (Wyo.1977). Summary judgment is appropriate in a declaratory judgment action so long as there are no genuine issues of material fact. *Fontaine v. Board of County Com'rs of Park County*, 4 P.3d 890, 892 (Wyo.2000); 22A Am.Jur.2d *Declaratory Judgments* § 225 (1988).

### DECLARATORY JUDGMENT

[¶ 5] Wyo. Stat. Ann. § 1–37–103 (LexisNexis 2001) provides, in pertinent part:

Any person ... whose rights, status or other legal relations are affected by ... a ... municipal ordinance ... may have any question of construction or validity arising under the [ordinance] determined and ob-

tain a declaration of rights, status or other legal relations.

[¶ 6] Declaratory judgments have the effect of other final judgments. Wyo. Stat. Ann. § 1–37–102 (LexisNexis 2001). The Uniform Declaratory Judgments Act, being remedial in nature, is to be liberally construed to eliminate uncertainty and to settle controversies. Wyo. Stat. Ann. § 1–37–114 (LexisNexis 2001); *Brimmer v. Thomson*, 521 P.2d 574, 577 (Wyo.1974). The Act is an appropriate vehicle, not for prejudging issues that should be decided by an administrative agency, but for interpreting the statute or ordinance upon which the administrative action is based. *Rocky Mountain Oil and Gas Ass'n v. State*, 645 P.2d 1163, 1168–69 (Wyo.1982).

### PLANNING AND ZONING

[¶ 7] Since the concept of a "nonconforming use" must be understood within the context of planning and zoning law, it may be helpful first to define those general terms:

Planning may range in scope from a study of the parking needs of a community, followed by a proposed solution, to a comprehensive plan for the development of an entire municipality, or even a region which includes several municipalities. It is a generic term, and not a word of art unless its dimensions are marked out by a statute or ordinance.

1 Kenneth H. Young, *Anderson's American Law of Zoning* § 1.03 at 7 (4th ed.1996). Municipal planning in Wyoming has as its goal the development of a "master plan for the physical development of the municipality." Wyo. Stat. Ann. § 15–1–503(a) (LexisNexis 2001). "The plan shall be made for the general purpose of guiding and accomplishing a coordinated, adjusted and harmonious development of the municipality which will best promote the general welfare as well as efficiency and economy in the process of development." Wyo. Stat. Ann. § 15–1–504 (LexisNexis 2001). "Planning, therefore, is more than a suggested pattern of land use; it involves the planning of all the usual public improvements and services which go into making up the community." *Ford v. Board*

*of County Com'rs of Converse County*, 924 P.2d 91, 95 (Wyo.1996).

■■■ [¶ 8] Zoning is a planning tool that must be used in accordance with a comprehensive plan. Wyo. Stat. Ann. § 15–1–601(d)(i) (LexisNexis 2001); 1 Young, *supra*, § 1.13 at 19.

Comprehensive zoning consists of the division of the whole territory of a municipality into districts, and the imposition of restrictions upon the use of land in such districts. * * * [Zoning regulations] permit a municipality to apply constant and consistent pressure upon landowners to the end that land use will be guided by the community plan and the public interest.

1 Young, *supra*, § 1.13 at 20 (footnote omitted). Municipal zoning in Wyoming contemplates the division of a town into districts, with uniform regulations within each district. Wyo. Stat. Ann. § 15–1–601(b) and (c).[1] We have described zoning as "the process that a community employs to legally control the use which may be made of property and the physical configuration of development upon the tracts of land located within its jurisdiction." *Ford*, 924 P.2d at 94. Zoning ordinances may regulate both the nature of the land usage and the physical dimension of uses, including height, setbacks, and minimum areas. *Cheyenne Airport Bd. v. Rogers*, 707 P.2d 717, 726 (Wyo.1985), *appeal dismissed*, 476 U.S. 1110, 106 S.Ct. 1961, 90 L.Ed.2d 647 (1986). The comprehensive plan is the policy statement; the zoning ordinances are what have the force and effect of law. *Ford*, 924 P.2d at 95.

■■■ [¶ 9] When a zoning ordinance goes into effect, almost invariably there will be existing buildings or uses that do not meet the new regulations for the zoning district in which they are located. Such buildings or uses are called "non-conforming uses."

"A non-conforming use is a use which, although it does not conform with existing zoning regulations, existed lawfully prior to the enactment of the zoning regulations. These uses are permitted to continue, although technically in violation of the current zoning regulations, until they are abandoned. An exception of this kind is commonly referred to as a 'grandfather' exception."

*River Springs Ltd. Liability Co. v. Board of County Com'rs of County of Teton*, 899 P.2d 1329, 1334 (Wyo.1995) (*quoting Longwell v. Hodge*, 171 W.Va. 45, 47, 297 S.E.2d 820, 822 n. 1 (1982)) (emphasis deleted); *see also* 8A *McQuillin Mun. Corp.* § 25.185 (3rd ed.1994).

■■■ [¶ 10] " 'When a zoning ordinance is enacted, it cannot outlaw previously existing non-conforming uses.' " *Snake River Venture v. Board of County Com'rs., Teton County*, 616 P.2d 744, 750 (Wyo.1980) (*quoting Boise City v. Blaser*, 98 Idaho 789, 572 P.2d 892, 894 (1977)). This right to continue a non-conforming use is a vested property right, protected by statute, and by both federal and state constitutions.[2] Wyoming's county and municipal zoning statutes both protect vested property rights, although in different ways. Wyo. Stat. Ann. § 18–5–207 (LexisNexis 2001) simply forbids counties from enacting zoning regulations that prohibit existing uses. Wyo. Stat. Ann. § 15–1–601(d)(iv), on the other hand, renders invalid any municipal zoning regulation that constitutes an unconstitutional taking without compensation. This Court has also noted that the doctrine of equitable estoppel plays a role in denying the authority to outlaw a grandfathered use. *Snake River Venture*, 616 P.2d at 750; *see also Allen v. City and County of Honolulu*, 58 Haw. 432, 571 P.2d 328, 330 (1977); 12 Richard R. Powell and Michael Allen Wolf, *Powell on Real Property*

---

1. This form of zoning is a "legislative refinement of the common law of nuisance...." 1 Young, *supra*, § 6.02 at 484 (*citing Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. ♦303 (1926), in which Associate Justice Sutherland said, " 'a nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard'....")

Zoning by district is often referred to as "Euclidian zoning." 1 Young, *supra*, § 6.02 at 484.

2. Such protection is generally stated in terms of due process of law. *See* 8A *McQuillin, supra*, § 25.180.20 at 9–10; 4 E.C. Yokley, *Zoning Law and Practice* § 22–3 (4th ed.1979); and 1 Young, *supra*, § 6.06.

§ 79C.06[1] (2001) and cases cited therein.[3] "The concept of vested rights 'is a judicial construct designed to provide individual relief in zoning cases involving egregious statutory or bureaucratic inequities.' " *Ebzery v. City of Sheridan*, 982 P.2d 1251, 1257 (Wyo. 1999) (*quoting Bruno v. Zoning Bd. of Adjustment of City of Philadelphia*, 664 A.2d 1077, 1080 (Pa.Cmwlth.1995)).

▆ [¶ 11] Because zoning ordinances are in derogation of the common law, and because they operate to deprive property owners of a use thereof that would otherwise be lawful, the general rule is to construe zoning ordinances strictly in favor of the property owner. 83 Am.Jur.2d *Zoning and Planning* § 699 at 602–04 (1992); 8A *McQuillin, supra*, § 25.181 n. 3 at 14–15. This rule does not, however, hold true for non-conforming uses which thwart the public policies behind comprehensive plans. Consequently, courts narrowly construe the right to continue a non-conforming use. 1 Young, *supra*, § 6.07 at 500–02; 83 Am.Jur.2d, *supra*, § 700 at 604–05; 8A *McQuillin, supra*, § 25.183.

▆ [¶ 12] The right to continue a nonconforming use exists only so long as the use, itself, continues to exist. Four principal methods of termination of a non-conforming use have been recognized: (1) abandonment; (2) discontinuance or non-use for a prescribed period; (3) amortization; and (4) voluntary or involuntary destruction. 12 *Powell on Real Property, supra*, § 79C.06[3][f]. Neither amortization nor destruction is at issue in the instant case. However, both abandonment and discontinuance must be addressed because, although they are distinct theories, both are mentioned in the Town's zoning ordinance:

> SECTION 7160. DISCONTINUANCE OR ABANDONMENT
>
> If a nonconforming use is operationally *discontinued or abandoned for a period of more than twelve (12) consecutive months, whether or not* the equipment or furniture are removed, or *there is an intention to resume such activity in the future,* such use may not be reestablished or resumed, and any subsequent use shall conform to the provisions specified by these Land Development Regulations. When government action, a natural disaster, or any other action not considered a willful act of the owner or occupant can be documented as the reason for discontinuance or abandonment, such time of discontinuance or abandonment shall not be calculated for the purpose of this Section. Regardless of the reason for discontinuance or abandonment, the period for reestablishing the nonconforming use may be extended by the Town Council for just cause.

Town of Jackson Land Development Regulations, § 7160 (emphasis added).

▆ [¶ 13] Historically, abandonment of a non-conforming use has been said to occur upon the concurrence of two factors: an intention to abandon and some overt act or failure to act that implies the owner's renunciation of the use. 8A *McQuillin, supra*, § 25.191 at 68–69; 12 *Powell on Real Property, supra*, § 79C.06[3][f][ii]; 4 E.C. Yokley, *Zoning Law and Practice*, § 22–13 (4th ed.1979). Abandonment has been equated with waiver, that is, " 'the voluntary intentional relinquishment of a known right.' " 4 Yokley, *supra*, § 22–13 at 93 (*quoting Longo v. Eilers*, 196 Misc. 909, 93 N.Y.S.2d 517 (1949)). The burden of proving an abandonment, which is a question of fact, lies with the party asserting abandonment. 83 Am. Jur.2d, *supra*, § 683 at 587–88.

▆ [¶ 14] Where a statute or ordinance provides for loss of the right to a non-conforming use upon non-use or discontinuance for a prescribed period of time, the party asserting the discontinuance need not prove intent to abandon as part of a *prima facie*

---

**3.** This is an exception to the general rule that estoppel should not be applied against governmental bodies. *See State, Dept. of Family Services v. Peterson*, 957 P.2d 1307, 1311 (Wyo. 1998); *Big Piney Oil & Gas Co. v. Wyoming Oil and Gas Conservation Com'n*, 715 P.2d 557, 560 (Wyo.1986); and *City of Sheridan, Wyo. v. Montana–Dakota Utilities Co.*, 157 F.Supp. 664, 670 (D.Wyo.1958) (general rule that estoppel is not applied against municipalities is not unalterable so as to perpetuate injustice).

case. However, there are two views as to the legal effect of the simple passage of time:

Many jurisdictions provide easier routes for terminating a nonconforming use on the basis of nonuse. Some jurisdictions impose a presumption of intent to abandon a nonconforming use upon the running of a certain period of nonuse. Thus, all a challenger need show to make out a prima facie case in such a jurisdiction is nonuse for the designated period. Still, the owner of the nonconforming use could come back with evidence to rebut the presumption. A number of jurisdictions have taken a more aggressive stance by allowing zoning authorities to do away with the intent issue altogether upon the running of a certain period of nonuse. In these jurisdictions, termination is automatic once nonuse over the discontinuance period is proved.

8A *McQuillin, supra,* § 25.191 at 68–69 (footnotes omitted).

[¶ 15] This Court has previously taken the position that non-use for a prescribed period creates a rebuttable presumption of an intent to abandon. *River Springs Ltd. Liability Co.,* 899 P.2d at 1335, *see also* 8A *McQuillin, supra,* § 25.194 at 76–78. *River Springs Ltd. Liability Co.* did not, however, involve a municipal ordinance that, like the Town's Land Development Regulations § 7160, makes the intent to abandon irrelevant.

## FACTS

[¶ 16] In 1993, Snake River obtained from the Town a building permit for the construction of a restaurant and micro-brewery. The building site was located in a district that was zoned "Core Commercial." Initially, Snake River invested approximately $1,768,000.00 in the project, adding an additional $1,000,000.00 since then. The Town approved expansion of the facility in 1996. In 1997, Snake River bought neighboring property, in part to provide additional parking for the restaurant and micro-brewery.

[¶ 17] The Core Commercial zone regulations in effect in 1993 allowed Snake River to provide for parking in three ways: on-site parking, off-site parking within 200 feet, or fee in-lieu-of parking. Specific ordinances relevant to the present controversy read as follows:

18.38.010 Off-street parking requirements.

A. At the time of erection of a new structure, or at the time of enlargement or change in use of an existing structure within any zone in the city, off-street parking shall be provided in accordance with the requirements of this section unless greater requirements are otherwise established. * * *

B. Location. Off-street parking facilities shall be located as hereafter specifi[ed], such distance shall be within walking distance, measured from the nearest point of the parking facility to the nearest point of the lot that such facility is required to serve.
* * *

4. Commercial Parking and All Non-residential Uses in Commercial Zones. The required amount of parking area shall be provided within two hundred feet.

18.38.040 Payment in lieu of providing off-street parking.

A. Whenever within the core commercial zoning district of the town, off-street parking spaces are to be provided in accordance with the requirements of Section 18.38.010(A), the property owner or developer shall have the option of providing such required parking spaces in accordance with the requirements of Section 18.38.010, or may, upon written application submitted to the town administrator, pay a fee to the town in lieu of the property owner or developer providing all or any portion of such required off-street parking.[4]

Town Ordinance §§ 18.38.010 and 18.38.040.

[¶ 18] Snake River opted to provide some

4. The purpose of the fee paid in-lieu-of owner-provided off-street parking was to allow the Town to fund alternative off-street parking facilities "for the benefit of those buildings, structures and uses in the core commercial district and the general community." Town Ordinance § 18.38.040(C).

on-site parking and some off-site parking.[5] The latter was accomplished through the lease of a lot directly across the street from the restaurant and micro-brewery. The building permit noted the exercise of this option.

[¶ 19] In 1995, the Town adopted a new zoning system, known as the Town of Jackson Land Development Regulations (LDR's). Under the LDR's, Snake River's property was zoned "Auto Urban Commercial." In this new zone, neither off-site leased parking nor the fee in-lieu-of parking was permitted.[6] Snake River was, however, allowed to continue to operate as a non-conforming use with its existing parking arrangements.

[¶ 20] Snake River had been paying $11,160.00 per year to lease fifty-one parking spaces. In 1998, lease renewal negotiations stalled when the lessor asked for $11,760.00 for eight spaces, or $18,687.16 for the fifty-one spaces with annual increases. The lessor would not sell the leased property to Snake River, and there is no other land within 200 feet of Snake River's premises available for parking. Snake River determined that the leased parking arrangement had become cost-prohibitive and asked the Town to amend the new zoning ordinances to include Snake River's property in the new fee in-lieu-of parking zone. The Town declined.

[¶ 21] Finding itself without its leased parking lot, and without the Town's cooperation in rezoning, Snake River next attempted simply to pay the fee in-lieu-of providing sufficient parking spaces. By letter dated February 17, 1998, Snake River requested the Town's Planning Department to authorize payment of the fee. This request occurred prior to final termination of the parking lease, which took place in June 1998. Payment of the fee was not authorized. Matters were then at a standstill until the Town filed this action on June 30, 1999.

**DISCUSSION**

[¶ 22] In this action, the Town seeks a judicial declaration that, because Snake River chose to provide a combination of on-site parking and off-site leased parking, Snake River's right to pay a fee in-lieu-of providing on-site parking was not grandfathered as part of its non-conforming use. Alternatively, if this Court finds that the choice of paying the fee in-lieu-of parking was part of the non-conforming use, then the Town argues that such right was abandoned when Snake River failed to pay the fee within twelve months of receiving its building permit. Finally, the Town's position is that the passage of twelve months after Snake River's off-site parking lease expired has also resulted in abandonment or discontinuance of that use.

[¶ 23] Snake River responds, first, with the contention that what was grandfathered as part of the non-conforming use was the option available under the old code Section 18.38.040, not just the one choice of off-site leased parking. Second, Snake River argues that its conduct, including its attempt to negotiate a reasonable lease or purchase of the parking lot, and its pursuit of the fee in-lieu-of parking alternative indicates it did not intend to abandon its rights.

[¶ 24] We agree with the district court that there are no genuine issues of material fact in this case. We do not, however, agree that the Town is entitled to judgment as a matter of law. The district court ruled in favor of the Town on the ground that there is no vested right to a potential use of property; to be grandfathered, there must be an actual use at the time the new zoning ordinance comes into effect. While this premise is true, we do not find that it controls the decision in this case.

[¶ 25] The concept of vested rights is applied to non-conforming uses to protect property owners' investments in their property. *Snake River Venture*, 616 P.2d at 750;

**5.** The number of required parking spaces was determined by a formula based upon the number of restaurant and bar seats. Snake River estimated that, if it could not locate additional parking spaces or pay the fee in-lieu-of parking, it would have to remove fifty-four seats, about half of its seating capacity.

**6.** The new fee in-lieu-of parking zone ended at the alley behind Snake River's premises.

12 *Powell on Real Property, supra,* § 79C.06[1][a]. For that reason, where substantial funds have not yet been expended on a proposed use, that proposed use is not considered to be a non-conforming use. *Snake River Venture,* 616 P.2d at 750; 8A *McQuillin, supra,* § 25.188 at 49–50. The district court relied on this theory in ruling against Snake River, concluding that since Snake River had not paid the fee in-lieu-of parking, that choice was not part of the grandfathered non-conforming use. We disagree.

**■** [¶ 26] As this case has been presented, the relevant inquiry is the extent of the vested right grandfathered as a legally non-conforming use.[7] The answer lies in an analysis of what is an appropriate exercise of a municipality's police powers. We have long held that a municipality may, through the exercise of its police power, regulate property usage without paying compensation, so long as the purpose of the regulation is to protect the public " 'health, safety, morals and general welfare,' " and the means used to implement the regulation are reasonable. *Sun Ridge Development, Inc. v. City of Cheyenne,* 787 P.2d 583, 589–90 (Wyo.1990) (*quoting Rogers,* 707 P.2d at 726); *State ex rel. George v. Hull,* 65 Wyo. 251, 199 P.2d 832, 835 (1948); *Weber v. City of Cheyenne,* 55 Wyo. 202, 97 P.2d 667, 670 (1940).[8] As mentioned above, Wyoming's municipal zoning statutes specifically recognize that zoning regulations may not "constitute[ ] an unconstitutional taking without compensation." Wyo. Stat. Ann. § 15–1–601(d)(iv).

**■** [¶ 27] There is no precise test available to determine reasonableness; rather, each case must be judged on its own facts. 12 *Powell on Real Property, supra,* § 79C.01[1][e]. The Wyoming State Legislature has specifically authorized municipalities to design plans to "[l]essen congestion in the streets," which certainly extends to the authority to regulate business parking. Wyo. Stat. Ann. § 15–1–601(d)(i)(A). The primary question presented in the instant case is whether the Town's interpretation of its zoning regulations unreasonably will deprive Snake River of a substantial portion of the value of its property. In answering such questions, courts often compare the gain or benefit to the public to the seriousness of the injury or loss to the owner. 83 Am.Jur.2d, *supra,* § 44 at 65. The test has also been stated as whether enforcement of the new ordinance would render "valueless substantial improvements or businesses built up over the years [or] cause serious financial harm to the property owner." *People v. Miller,* 304 N.Y. 105, 106 N.E.2d 34, 36 (1952).

**■** [¶ 28] As mentioned above, when the case involves an ordinance change that invalidates a previously valid use of property, these considerations also involve application of the doctrine of equitable estoppel. *Snake River Venture,* 616 P.2d at 750.

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might otherwise have existed as against another person who has in good faith relied upon such conduct and has

7. Because the parties have presented this question solely in terms of a non-conforming use, we will not address the issue of whether an "accessory use," such as parking, can become the basis for establishment of a non-conforming use. *See Gada v. Zoning Bd. of Appeals of Town of East Lyme,* 151 Conn. 46, 193 A.2d 502, 503 (1963); *Gallagher v. Board of Appeals of Acton,* 44 Mass. App.Ct. 906, 687 N.E.2d 1277, 1279 (1997); *AWACS, Inc. v. Zoning Hearing Bd. of Newton Tp., Delaware County,* 702 A.2d 604, 607 (Pa. Cmwlth.1997), *aff'd,* 559 Pa. 104, 739 A.2d 159 (1999); *Markey v. Zoning Bd. of Adjustment,* 409 Pa. 430, 187 A.2d 175, 177 (1963); 12 *Powell on Real Property, supra,* § 79C.06[3][c][v]; 8A *McQuillin, supra,* § 25.186 at 36–38; and 2 Yokley, *supra,* § 8–3. The primary use of Snake River's property as a restaurant and micro-brew-

ery is not a use that once was lawful and now is unlawful. It was and is lawful. In that sense, it is not a non-conforming use. The parties have, however, treated it thus, and we will follow their lead for purposes of this case.

8. Police power regulations may impact conforming as well as non-conforming uses. A "use expressly permitted by the terms of an ordinance is available to a landowner as a matter of right and can be impaired lawfully only when the restriction regulating it bears a reasonable relationship to the objectives of the police power." *Westminster Corp. v. Zoning Bd. of Review of City of Providence,* 103 R.I. 381, 238 A.2d 353, 358 (1968).

been led thereby to change his position for the worse.

*State Farm Mut. Auto. Ins. Co. v. Petsch,* 261 F.2d 331, 335 (10th Cir.1958). Equitable estoppel is not applicable unless the person relied, and had the right to rely, on representations or conduct which induced and were the immediate or proximate cause of the act which is complained of. *Roth v. First Sec. Bank of Rock Springs, Wyo.,* 684 P.2d 93, 96 (Wyo.1984). Equitable estoppel is applied to prevent injury arising from actions or declarations which are acted on in good faith. *Squaw Mountain Cattle Co. v. Bowen,* 804 P.2d 1292, 1297 (Wyo.1991); *Crosby v. Strahan's Estate,* 78 Wyo. 302, 324 P.2d 492, 498 (1958).

" 'Estoppel arises only when a party, by acts, conduct, or acquiescence causes another to change his position. * * *' " * * * The facts and circumstances of each individual case govern the application of equitable estoppel.

*B–F Drilling, Inc. v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 942 P.2d 392, 397 (Wyo.1997) (*quoting Garlach v. Tuttle,* 705 P.2d 828, 829–30 (Wyo.1985) and *Roth,* 684 P.2d at 96). The burden of proof lies with the party asserting equitable estoppel. *Pickett v. Associates Discount Corp. of Wyo.,* 435 P.2d 445, 447 (Wyo.1967). Factors considered in applying the doctrine to determine whether a right has vested, either under a land use permit or as a non-conforming use, include reliance on prior law or regulation, due diligence, good faith, expenditure of unrecoverable funds, and inadequate public interest to divest the right. 12 *Powell on Real Property, supra,* § 79C.06[1][a].

[¶ 29] Application of this body of law to the present controversy requires us finally to note one other legal consideration. Construction of legislative enactments is only appropriate where the enactment has first been found, as a matter of law, to be ambiguous. *Gunderson v. State,* 925 P.2d 1300, 1304 (Wyo.1996). An enactment is ambiguous if it is one whose meaning is uncertain and it is susceptible of more than one meaning. *Amrein v. State,* 836 P.2d 862, 864–65 (Wyo.1992). In the instant case, the Town's zoning ordinances are ambiguous because

readers may readily come to different conclusions as to whether the initial selection of one choice under the parking options contained in the old code Sections 18.38.010 and 18.38.040 forever eliminates selection of a different option. In that regard, a primary rule of statutory construction, which applies equally to the construction of a municipal ordinance, is that legislative enactments are intended to be logical, reasonable, and just. *Halliburton Co. v. McAdams, Roux and Associates,* 773 P.2d 153, 155 (Wyo.1989) (*quoting State ex rel. Dept. of Revenue and Taxation, Motor Vehicle Div. v. McNeese,* 718 P.2d 38, 40 (Wyo.1986)); *Huber v. City of Casper,* 727 P.2d 1002, 1004 (Wyo.1986).

## CONCLUSION

[¶ 30] In 1993, Snake River obtained a building permit for a restaurant and microbrewery. Snake River then invested approximately $1,768,000.00 in the project. The zoning ordinances in effect at the time allowed it to choose from three methods of providing patron parking: on-site, off-site, and fee in-lieu-of parking. Snake River chose a combination of on-site parking and off-site leased parking. The Town approved this arrangement. In 1995, the Town amended its zoning ordinances so that Snake River's property was no longer in the area approved for payment of a fee in-lieu-of parking. In 1996, the Town approved an expansion of Snake River's project, and Snake River eventually invested another $1,000,000.00 or so in the business. In 1998, Snake River's parking lease became, in its opinion, cost-prohibitive, so it searched for other alternatives, including paying the fee in-lieu-of parking. The Town has taken the position that Snake River abandoned the fee in-lieu-of parking choice by not adopting it initially in 1993, or within twelve months of issuance of the building permit, and that Snake River has now abandoned the off-site choice by not renewing its parking lease for twelve months.

[¶ 31] We conclude that the only reasonable interpretation of the Town's zoning ordinances is that all three choices under the parking option remained available to Snake River as part of its non-conforming

use. No reasonable town official would have intended the ordinances to require a property owner to gamble his investment on the single hope that an off-site leased parking arrangement would exist indefinitely in the future. The only reasonable interpretation of the ordinances is that expensive improvements could be made to the property with the assurance that the owner would be able to provide patron parking in the future, even if off-site leased parking later became unavailable due to cost, through one of the other methods allowed under the zoning ordinances. The continuation of Snake River's non-conforming use "carries with it all the incidents of that use which appertained to it" under the original zoning ordinances. *Abbadessa v. Board of Zoning Appeals of City of New Haven*, 134 Conn. 28, 54 A.2d 675, 678 (1947); 8A *McQuillin, supra,* § 25.200 at 89. When the Town approved this project in 1993, there was insufficient space on Snake River's property to provide on-site patron parking. Both Snake River and the Town knew that, in the future, parking would have to be accommodated off-site or through payment of the fee in-lieu-of parking.

 [¶ 32] We also conclude, both in the context of equitable estoppel and in the context of the reasonable exercise of its police power, that the Town may not enforce its new zoning ordinances so as to deprive Snake River of a substantial portion of the value of its investment in its property. Under the circumstances of this case, a strict construction of the ordinances is appropriate to protect the right of Snake River to make lawful use of its property. The Town amended the zoning ordinances to take Snake River out of the fee in-lieu-of zone after Snake River relied on the existing ordinances and the Town's approval of the project. The new fee in-lieu-of zone ends in the alley directly behind Snake River's property, so allowing fee in-lieu-of parking will not be an aberration in the area. There is nothing in the record showing that the benefit to the Town from excluding Snake River is equal to the damage caused Snake River from the exclusion. It would violate Wyo. Stat. Ann. § 15–1–601(d)(iv) to declare now that the parking options are no longer available to Snake River; the result would be to "render valueless"

Snake River's substantial business investment.

 [¶ 33] On the final issue, we conclude that Snake River never showed any intent to abandon its non-conforming use. Discontinuance of the leased parking arrangement, one of the "incidents" of that use, was caused by economic conditions beyond its control. The primary use of the premises as a restaurant and a micro-brewery was never discontinued, and various solutions to the accessory parking use were sought. There simply was no discontinuance, and certainly no abandonment, of the primary use of Snake River's premises.

[¶ 34] The decision of the district court is reversed and the case is remanded with instructions to enter summary judgment in favor of Snake River. We have made no decision herein as to the amount of any fee in-lieu-of parking that may be owed to the Town as that issue is not now before this Court.