2010 WY 7

Joan Cozort LAWRENCE, a/k/a Joan Lawrence, a/k/a Joan Cozort, Appellant (Defendant),

v.

CITY OF RAWLINS, a municipal corporation, Appellee (Plaintiff),

and

Transportation Commission of Wyoming, Appellee (Third–Party Defendant).

No. S–09–0134.

Supreme Court of Wyoming.

Jan. 25, 2010.

Representing Appellant: Bruce T. Moats, Law Office of Bruce T. Moats, Cheyenne, Wyoming.

Representing Appellee City of Rawlins: Daniel T. Massey and Amy L. Bach of City of Rawlins, City Attorney's Office, Rawlins, Wyoming. Argument by Mr. Massey.

Representing Appellee Transportation Commission of Wyoming: No appearance.

Before VOIGT, C.J., and HILL, KITE, and BURKE, JJ, and ARNOLD, D.J.

VOIGT, Chief Justice.

[¶1]   This is an appeal from two related district court orders in a declaratory judgment action between the Appellant and the City of Rawlins (City) over a junkyard, which action was consolidated with the appeal of the Appellant's municipal court conviction for violation of a nuisance ordinance. The first order granted the City partial summary judgment. The second order was entered after a bench trial on the issues left undecided by the summary judgment. We will affirm in part and reverse in part, remanding for further proceedings consistent with this opinion.

## ISSUES

[¶2]   1.   Whether the district court erred as a matter of law in concluding that the

Appellant was bound by a certain settlement agreement?

█ 2. Whether the Appellant has a "grandfathered" right to use as a junkyard certain areas of her property not zoned industrial? [1]

3. Whether the Appellant has abandoned or discontinued the use as a junkyard of certain areas of her property zoned industrial?

## FACTS

[¶ 3] Tom Lawrence began operating a junkyard in the contested area in 1958. Mr. Lawrence and the Appellant were married in 1972, after which they jointly operated the junkyard in the same location. The Appellant became sole owner and proprietor of the business after her husband's death in 1999. The record is unclear as to the exact location of the junkyard over the years, nor does it explain how the Lawrences began operation of the junkyard several years before they purchased any of the parcels upon which the junkyard was being operated or had previously been operated at the time of trial.[2]

[¶ 4] The Lawrence property is comprised of eight parcels, generally configured as follows:

[¶ 5] The City first adopted a zoning ordinance in 1973. That ordinance was readopted in 1989 after the district court found it invalid, in an unrelated matter, due to lack of publication.[3] In the interim, two matters of significance had occurred. In 1979, at Mr. Lawrence's request, the City redesignated a large part of his property as an industrial

---

1. A non-conforming use is a use which, although it does not conform with existing zoning regulations, existed lawfully prior to the enactment of the zoning regulations. These uses are permitted to continue, although technically in violation of the current zoning regulations, until they are abandoned. An exception of this kind is commonly referred to as a "grandfather" exception.
*Snake River Brewing Co. v. Town of Jackson*, 2002 WY 11, ¶ 9, 39 P.3d 397, 403 (Wyo.2002) (internal citations and quotation marks omitted).

2. Of the parcels at issue, the Lawrences purchased two in 1965, one in 1969, one in 1971, one in 1972, and two in 1974. An eighth parcel has been leased from the Union Pacific Railroad Company.

3. The City contends that, in 2007, it was discovered that the ordinances had, indeed, been published as required by law, but that is of no consequence to determination of the issues in this action.

zone. This area included all of parcels 1, 2, and 5, the western part of parcel 3 (south of parcel 5), and all but the northern portions of parcels 4 and 6. Under the 1973 ordinance, the northern portions of parcels 4 and 6 were zoned residential. Parcel 7 and the eastern portion of parcel 3 (the area south of parcels 1, 2, and 6) were zoned highway business. Parcel 8 was zoned industrial.

[¶ 6] The second significant occurrence between 1973 and 1989 was that in 1982, the City and Mr. Lawrence settled a lawsuit over the operation of the junkyard by filing a Settlement Agreement. In the Settlement Agreement, Mr. Lawrence agreed never to deny the validity of the 1973 zoning ordinance, agreed that he had no "grandfathered" rights in certain areas zoned residential and highway business, and agreed to fence and otherwise organize his business, known as Tom's Body Shop, located on parcel 8 shown above. *See supra* ¶ 4. The Settlement Agreement also provided that its terms would be considered covenants running with the land described in attached exhibits. It is notable that this lawsuit was filed shortly after the 1979 zoning change, and that the effect of the Settlement Agreement was Mr. Lawrence's admission that he had no right to operate the junkyard in the areas not contained in the industrial zone defined in that zoning change, and in parcel 8, which was also zoned industrial.

[¶ 7] At some unspecified time, Mr. Lawrence erected a fence running generally east-and-west along a hilltop, approximately halfway between the north and south borders of parcels 5 and 6, south of parcel 4, and just south of the northern border of parcel 2, shown by a dotted line on the above sketch. *See supra* ¶ 4. The main portion of the junkyard lies south of this fence and north of the south border of parcel 3. Perhaps the most significant aspect of this fence, as it relates to these proceedings, is that it created an area in the northern part of parcel 5, in the northern part of parcel 6 south of the residential zone, in the part of parcel 4 not in the residential zone, and in the very northern part of parcel 2, all of which area is in the industrial zone, but which is outside of the fenced area of the junkyard.

[¶ 8] In 2007, the City issued the Appellant a citation in municipal court for violation of a nuisance ordinance for having "derelict vehicles" and junk on parcel 7. The Appellant's defense to that citation was that she had a grandfathered right to use parcel 7 in her junkyard business. That defense was rejected, and she was convicted. She appealed to the district court, where her appeal was stayed by stipulation of the parties so that it could be heard along with this action.

[¶ 9] Both parties filed motions for summary judgment in the declaratory judgment action. The district court's Order Granting Partial Summary Judgment contained the following findings and conclusions:

1. Genuine issues of material fact exist as to whether the Appellant has abandoned her use of the property.

2. Genuine issues of material fact exist as to whether the junkyard was a legal use at the time the zoning ordinance was adopted in 1989.

3. The 1982 Settlement Agreement is, as a matter of law, valid and enforceable against both parties.

4. The Appellant is subject to the City's abatement of dangerous building ordinances.

5. Genuine issues of material fact exist as to whether the junkyard violates the City's licensing ordinance.

6. The Wyoming Junkyard Control Act, found at Wyo. Stat. Ann. §§ 33–19–101 through 33–19–110 (LexisNexis 2009), applies to the junkyard.

Based upon these findings and conclusions, the Appellant was ordered to suspend operations in, and remove inventory from, any residential areas, and to comply with the Wyoming Junkyard Control Act.

[¶ 10] Subsequently, the district court heard the issues left remaining after the summary judgment order. A two-day bench trial took place on May 28–29, 2008. In its decision letter thereafter, the district court made the following findings of fact and reached the following conclusions of law:

1. The 1989 zoning ordinance prohibits junkyards in residential zones and the Appellant therefore is prohibited from operat-

ing her junkyard in the northern 200 feet of parcels 4 and 6, which area is zoned residential.

2. The junkyard is not a legal use of parcel 7 or the eastern portion of parcel 3 because both are zoned highway business, where junkyards are not permitted, and, as to the eastern portion of parcel 3, for the additional reason that, in the 1982 Settlement Agreement, Mr. Lawrence gave up any grandfathered right to operate a junkyard.

3. The junkyard was, in 1989, a legal use in the industrially zoned areas of parcels 1, 2, 3, 4, 5, 6, and 8. The Appellant's failure to obtain a junkyard license and failure to comply with the Junkyard Control Act did not render the use illegal. Consequently, the junkyard is a grandfathered use in the industrially zoned areas.

4. Under the applicable municipal ordinances, the City failed to prove that the Appellant has abandoned her junkyard business "as a whole."

5. Under the applicable municipal ordinances, the City has proved that the Appellant abandoned her use of, and relinquished her grandfathered right to, the industrially zoned areas of parcels 4 and 6 north of the fence.

6. The City's nuisance and dangerous building ordinances apply to the Appellant and her property, but the nuisance ordinance may not be utilized to prohibit the storage of derelict vehicles on premises lawfully used as a junkyard where such vehicles are necessary to operation of the business.

7. The junkyard is subject to compliance with the Junkyard Control Act, and the Appellant immediately must contact the Transportation Commission of Wyoming to determine the requirements of compliance, particularly in regard to screening.

8. Because parcel 7 has never been zoned industrial, and because the Appellant has no grandfathered nonconforming use rights, her operation of a junkyard on that parcel is unlawful, meaning that her municipal court nuisance conviction should be affirmed.

[¶ 11] An Order based upon the decision letter was entered on June 26, 2008. Though not essential to resolution of the issues involved herein, we will note that the district court subsequently granted the Appellant's motion to join the Transportation Commission of Wyoming as a party defendant for the purpose of determining its obligations in regard to the Junkyard Control Act, and later issued a summary judgment order requiring the Commission to participate in the decision whether the Appellant's property should be screened at the Commission's expense or she should be ordered to relocate the salvage materials.

## STANDARDS OF REVIEW

[¶ 12] "Summary judgment may be the appropriate resolution in a declaratory judgment action." *Coffinberry v. Bd. of County Comm'rs of the County of Hot Springs,* 2008 WY 110, ¶ 3, 192 P.3d 978, 979 (Wyo.2008).

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if proven, would establish or refute an essential element of a cause of action or a defense that a party has asserted. *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, ¶ 9, 39 P.3d 1051, [1055] (Wyo.2002).

> We evaluate the propriety of a summary judgment by employing the same standards and by examining the same material as the district court. *Id.* We examine *de novo* the record, in the light most favorable to the party opposing the motion, affording to that party the benefit of all favorable inferences that may be drawn from the record. *Roussalis v. Wyoming Medical Center, Inc.,* 4 P.3d 209, 229 (Wyo. 2000). If upon review of the record, doubt exists about the presence of issues of material fact, that doubt must be resolved against the party seeking summary judg-

ment. *Id.* We accord no deference to the district court's decisions on issues of law. *Metz*, ¶ 9.

*Linton v. E.C. Cates Agency, Inc.*, 2005 WY 63, ¶¶ 6–7, 113 P.3d 26, 28 (Wyo.2005). We "may affirm the summary judgment on any legal grounds appearing in the record." *Wyo. Cmty. Coll. Comm'n v. Casper Cmty. Coll. Dist.*, 2001 WY 86, ¶ 11, 31 P.3d 1242, 1247 (Wyo.2001).

[¶ 13] Our standard for reviewing findings made and conclusions reached after a bench trial differs from our standard for reviewing a summary judgment:

After a bench trial, we review the trial court's factual findings under a clearly erroneous standard and its legal conclusions de novo. *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo. 2003) (citing *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo.1999)). We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law. *Deroche v. R.L. Manning Co.*, 737 P.2d 332, 336 (Wyo.1987). Although the factual findings of a trial court are not entitled to the limited review afforded a jury verdict, the findings are presumptively correct. *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005).

This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. *Forshee, et ux. v. Delaney, et ux.*, 2005 WY 103, ¶ 6, 118 P.3d 445, 448 (Wyo.2005). Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses. We accept the prevailing party's evidence as true and give to that evidence every favorable inference which may fairly and reasonably be drawn from it. *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60

(Wyo.2004) (quoting *Life Care Centers of America, Inc. v. Dexter*, 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003)). Findings may not be set aside because we would have reached a different result. *Harber*, ¶ 7, 97 P.3d at 60 (citing *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.*, 2003 WY 139, ¶ 6, 78 P.3d 679, 681 (Wyo.2003)). A finding will only be set aside if, although there is evidence to support it, this Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Mullinnix LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006).

*Snelling v. Roman*, 2007 WY 49, ¶¶ 7–8, 154 P.3d 341, 345 (Wyo.2007).

## DISCUSSION

*Whether the district court erred as a matter of law in concluding that the Appellant was bound by a certain settlement agreement?*

[¶ 14] The question of the validity of the 1982 Settlement Agreement that ended the lawsuit between the Appellant's husband and the City was determined in the present case in the district court's Order Granting Partial Summary Judgment. Accordingly, our standard for the review of summary judgments applies. In that regard, the Appellant does not suggest that summary judgment was inappropriate due to the existence of genuine issues of material fact, but insists that the district court erred as a matter of law. In taking that position, the Appellant presents two theories in this appeal, one of which was raised below, and one of which was not. The legal theory raised below is the doctrine of mutual mistake.[4] The legal theory not raised below is that the City cannot seek enforcement of the 1982 Settlement Agreement because the Settle-

---

4. Technically, mutual mistake is not a *legal* cause of action or defense; rather, its existence may lead to equitable relief in the form of reformation or rescission of an instrument. *W.N. McMurry Constr. Co. v. Cmty. First Ins., Inc.*, 2007 WY 96, ¶ 18, 160 P.3d 71, 77 (Wyo.2007); *Kipp v. Agee*, 457 P.2d 673, 675 (Wyo.1969). "Requests for equitable relief are matters over which the district court exercises broad discretion." *Jacoby v.*

*Jacoby*, 2004 WY 140, ¶ 7, 100 P.3d 852, 855 (Wyo.2004). That raises the question of whether our review in this instance ought to be for an abuse of discretion, rather than *de novo* review for an error of law. Because we will determine that mutual mistake did not occur (*see infra* ¶¶ 17–22), it was neither an abuse of discretion nor an error of law for the district court not to apply the doctrine.

ment Agreement was based upon an ordinance later declared invalid.

**[¶ 15]** We have said many times that we will not consider on appeal issues not raised below. *Wyo. Bd. of Land Comm'rs v. Antelope Coal Co.,* 2008 WY 60, ¶ 16, 185 P.3d 666, 670 (Wyo.2008); *Adams v. State,* 2005 WY 94, ¶ 27, 117 P.3d 1210, 1219 (Wyo. 2005); *Meima v. Broemmel,* 2005 WY 87, ¶ 56, 117 P.3d 429, 447 (Wyo.2005). We continue to adhere to that policy, and we will not consider the Appellant's argument as to the non-enforceability of the Settlement Agreement due to its being based on an ordinance later declared invalid.[5] As will be seen, however, that argument is so intertwined with the mutual mistake argument, that it is, in effect, determined by resolution of that issue.

**[¶ 16]** Turning our attention to the doctrine of mutual mistake, we will first identify its substance:

> This court has previously set forth the elements of mutual mistake:

> > The essential elements of mutual mistake in a written instrument for which a court of competent jurisdiction may grant appropriate relief are that there was an antecedent agreement which the written instrument undertakes to evidence; that a mistake occurred in the drafting of the instrument and not in the antecedent agreement which it undertakes to evidence; and that in the absence of fraud or inequitable conduct on the part of one of the parties, the mistake was mutual.

> *Hansen v. Little Bear Inn Co.,* 9 P.3d 960, 964 (Wyo.2000) (quoting *Mathis* [*v. Wendling,*] 962 P.2d [160], 164 [ (Wyo.1998)) ].

*Hutchings v. Krachun,* 2002 WY 98, ¶ 20, 49 P.3d 176, 183 (Wyo.2002), *overruled in part on other grounds by White v. Allen,* 2003 WY

39, ¶ 12, 65 P.3d 395, 399 (Wyo.2003). The party claiming mutual mistake must prove its existence by clear and convincing evidence. *Pfister v. Brown,* 498 P.2d 1243, 1245 (Wyo. 1972).

**[¶ 17]** The Appellant contends that the mutual mistake in this case was the belief by both her husband and the City that the 1973 zoning ordinance was valid. Our analysis of this issue needs to go little further than that assertion. In the litigation that resulted in the Settlement Agreement, the City alleged that Mr. Lawrence's junkyard violated the City's zoning ordinance in several particulars.[6] Mr. Lawrence pled as an affirmative defense that the zoning ordinance was invalid and unenforceable, and in a request for admissions, he asked the City to admit that the ordinance was not published as required by law. Clearly, one of the centrally contested issues in that litigation was the validity of the zoning ordinance.

**[¶ 18]** After reciting that the parties desired amicably to settle the litigation, the Settlement Agreement contained as its first provision Mr. Lawrence's agreement to admit and be estopped from denying the validity of the zoning ordinance. The Appellant has not produced one shred of evidence that such was not the parties' antecedent agreement, correctly reduced to writing. The district court appropriately identified this flaw in the Appellant's reliance upon the doctrine of mutual mistake by noting that the parties to the Settlement Agreement actually had been "keenly aware" of the potential validity issue.

**[¶ 19]** The City believed its ordinance was valid and enforceable. Mr. Lawrence believed it was not. The two parties agreed to settle that controversy, as part of the overall settlement of the litigation, by having Mr.

---

5. In her reply brief, the Appellant insists that she raised this issue in the district court, both in her Brief in Support of Defendant's Motion for Summary Judgment, and in her Brief in Opposition to Plaintiff's Motion for Summary Judgment. We have examined those briefs however, and find that any references to this issue are vague and unsupported by citation to authority, and are made only as part of the mutual mistake argument. The issue was not, in substance, raised below.

6. Attached to the Appellant's brief, although not contained in the record on appeal, is a copy of the Amended Petition for Permanent Injunction filed by the City in that litigation. The Appellant urges this Court to take judicial notice of the pleading, and the City does not appear to object. *See Texas West Oil & Gas Corp. v. First Interstate Bank of Casper,* 743 P.2d 857, 858–59 (Wyo. 1987).

Lawrence agree not to contest the validity and enforceability of the ordinance. The doctrine of mutual mistake simply does not fit that scenario, and the district court did not err in so finding.

[¶ 20] In what might be described as a "fallback" position, the Appellant makes a brief argument that an attachment to the Settlement Agreement that apparently contained the legal descriptions of the properties discussed in the main document cannot be located, therefore rendering the Settlement Agreement unenforceable. The district court made the following specific finding to the contrary:

> Mrs. Lawrence also mentions that a certain Exhibit A to the *Agreement* is missing. Apparently this document cannot be located in the court files or elsewhere. She argues that the *Agreement* is unenforceable without Exhibit A, as the parties are uncertain as to which properties or parcels are subject to the *Agreement*. The Court disagrees. The *Agreement*, taken in the context of Carbon County Civil Action No. 80C–425 as a whole, and read in its entirety, sufficiently explains the parcels at issues [sic] and the agreement of the parties as to those parcels. Accordingly, the *Agreement* remains enforceable as against the City and Mrs. Lawrence.

[¶ 21] We conclude that the Appellant's generalized and unsubstantiated claim in regard to the attachment is insufficient to overcome the district court's determination. The district court had all the available documentation, including the voluminous materials filed by both parties in support of their respective motions for summary judgment. The Appellant simply has not shown that, in utilizing those materials and the arguments of counsel, the district court was not able to determine what parcels of land were at issue. Perhaps most compelling is the fact that, in both the earlier litigation and in the present litigation, there has been no suggestion of a dispute as to (1) what parcels the Lawrences owned or leased; (2) what parcels were zoned residential; (3) what parcels were zoned industrial; and (4) what parcels were zoned highway business. Furthermore, there has never been a suggestion that there

was some land at issue other than the eight parcels identified hereinabove. *See supra* ¶ 4. Beyond that, the summary judgment decision letter and order reach only two conclusions of substance as concerns this appeal: that the Appellant could not continue her junkyard in residentially zoned areas, and the Settlement Agreement was enforceable. Finding that genuine issues of material fact existed as to the "how's and where's" of those findings, the district court left all remaining issues for determination at trial. Consequently, even if we read the Settlement Agreement in the light most favorable to the Appellant, we cannot find that the district court erred as to its enforceability. Basically, the summary judgment rejected the applicability of the doctrine of mutual mistake, concluded that the Junkyard Control Act applied to the Appellant's junkyard, and left all remaining questions for the bench trial. We see no error in that resolution.

### *Whether the Appellant has a "grandfathered" right to use as a junkyard certain areas of her property not zoned industrial?*

[¶ 22] Application of a particular standard of review to this issue is a bit complicated, inasmuch as it was determined in part by the district court via summary judgment, and in part by the decision letter and order entered after the bench trial. That difficulty is alleviated somewhat, however, because discussion of this issue requires a parcel-by-parcel analysis, and the two district court orders are clear as to which parcel is being addressed at any given time.

[¶ 23] There is an additional complication. As stated earlier herein, this case was at the district court level a consolidation of two cases: the Appellant's appeal of her municipal court nuisance ordinance violation, and the City's declaratory judgment action. In municipal court, the Appellant was convicted of having two derelict vehicles on parcel 7. Her affirmative defense to that allegation was that she had a grandfathered right to maintain a junkyard on that parcel. In its bench trial decision letter, the district court affirmed the municipal court conviction, holding as part of its overall resolution of the

case that the Appellant did not have a grand-fathered right to use the parcel as part of her junkyard. The complication arises from the fact that the Appellant appealed to this Court from both the summary judgment order and the bench trial order, but did not file a petition for review of the municipal court affirmance, as could have been done under Wyo. Stat. Ann. § 5–2–119 (LexisNexis 2009) and W.R.A.P. 13. As a result, that conviction stands, even though the Appellant's defense—her grandfathered rights—continued to be litigated in the declaratory judgment action.[7]

[¶ 24] To begin this discussion, we will note some undisputed material facts about the several parcels at issue. First, the junkyard began its existence in 1958. Second, all of the parcels except parcel 8 were purchased by the Lawrences prior to the 1979 zoning change and prior to the 1982 Settlement Agreement and, therefore, prior to the 1989 effective date of the readopted zoning ordinance. Parcel 8 was leased from the Union Pacific Railroad Company throughout the same period. Under both zoning ordinances, parcels 1, 2, 5, and 8 were zoned industrial. Parcel 7 was zoned highway business. The northern 200 feet of parcels 4 and 6 was zoned residential, with the balance being zoned industrial. The portion of parcel 3 lying south of parcels 1, 2, 4, and 6 was zoned highway business, while the portion of parcel 3 lying south of parcel 5 was zoned industrial. While the exact nature and dates of use of the various parcels was controverted at trial, it is clear that, at one time or another, the Lawrences used all of the parcels in their junkyard business.

[¶ 25] The specific question now at hand involves only those parcels that are not zoned industrial. The importance of the distinction between the industrially zoned areas

of the junkyard and the nonindustrially zoned areas of the junkyard emerged periodically during the district court proceedings, but eventually was muddled and lost in the City's effort to convince the district court that the Appellant had abandoned the junkyard business "as a whole." The problem, of course, is that the twin concepts of abandonment or discontinuation of use, both under the general law of zoning and the applicable municipal ordinances, apply only to nonconforming uses, not to conforming uses. *Snake River Brewing Co. v. Town of Jackson*, 2002 WY 11, ¶ 9, 39 P.3d 397, 403 (Wyo.2002); 83 Am.Jur.2d *Zoning and Planning* § 611 (2003); RAWLINS, WYO., MUNICIPAL CODE §§ 19.52.020, 19.52.040, 19.52.050, *available at* http://www.rawlins-wyoming.com/code.htm (last visited Jan. 21, 2010). As was mentioned above (*see supra* ¶ 2 n. 1), it is the nonconforming use that may obtain a "grandfather" exception. Conforming uses have no such need.

[¶ 26] It has never been suggested in this case that the junkyard is not a conforming use, in the zoning sense, in the industrially zoned areas of the Appellant's property.[8] Consequently, the questions of whether the Appellant has grandfathered rights to the continued operation of her junkyard, or whether she has abandoned or discontinued that use, apply only to the residentially zoned portions of parcels 4 and 6, the highway business zoned portion of parcel 3, and parcel 7. In that regard, we do not agree with the district court's conclusion that, because junkyards never were authorized in residential or highway business zones, the Appellant's junkyard never was legal in those zones. The junkyard was "legal" in those areas before zoning occurred, to the extent that there was nothing to forbid the use. The junkyard remained "legal" in those areas after zoning

---

7. The decision letter after the bench trial indicated that the municipal court conviction was "affirmed in all respects," but the Order that followed did not mention the municipal court case. In addition, the former, but not the latter, carried both case headings. Therefore, even though no such order is in the record, we assume that a separate order was entered in the district court appeal affirming the municipal court conviction. That is the order from which no petition for review was filed. At any rate, the Appellant

conceded below that the fine levied against her had been upheld and that she would have to pay it because she did not bring that judgment and sentence before this Court.

8. The district court rejected the City's contention that, even though conforming, the junkyard had become an "illegal" use because of licensing failures or the failure to meet the Junkyard Control Act. That determination was not appealed.

occurred, to the extent that a grandfather exception applied.

■ [¶ 27] We conclude that we do not need to reach the question of whether the Appellant abandoned or discontinued her use of the junkyard in the residentially zoned portions of parcels 4 and 6, or the highway business zoned portion of parcel 3, because we do agree with the district court's conclusion that any grandfathered rights to such nonconforming use in those areas were relinquished by Mr. Lawrence in the 1982 Settlement Agreement.[9] As a result, when the zoning ordinance was readopted in 1989, the junkyard was not a legal use in those areas, and had no grandfathered status. The junkyard there is a nonconforming use and the City has the right to enforce its ordinances accordingly.

■ [¶ 28] The same cannot be said of parcel 7. There is no mention of parcel 7 in the Settlement Agreement, even though the evidence indicates that the Appellant and her husband used parcel 7 as part of their junkyard business from the time they purchased it in 1971. In fact, one of the most-repeated grievances voiced by the City during the district court proceedings was that junked cars located on that parcel had been there for so long that they had "40–year–old trees" growing up through them. The ineluctable fact is that the junkyard existed on parcel 7 at the time that parcel was zoned highway business, and that such use became a grandfathered nonconforming use at that time. The district court erred as a matter of law in concluding that the Appellant could not use parcel 7 for junkyard purposes because it had never been zoned industrial. The right to use parcel 7 as a junkyard arose long before the parcel was zoned, and survived zoning due to its grandfathered status.

[¶ 29] The district court's conclusion that the Appellant never had a grandfathered nonconforming use on parcel 7 prevented it from reaching the determinative issue in regard to that parcel, which determinative issue is whether the City proved discontinuance or abandonment of that use under the laws of the state and relevant municipal ordinances. Ironically, the very fact presented by the City to prove that the Appellant maintained a nuisance on parcel 7—the parking of junked cars—is the very fact that is sufficient to prove that she did not abandon or discontinue her use of the parcel as part of the junkyard. *Caster v. West Valley City,* 2001 UT App 212, ¶ 6, 29 P.3d 22, 24 (Utah Ct.App.2001) ("Thus, storing or keeping motor vehicles on a property constitutes the minimum activity required for continued use of the property."). *See also River Springs Ltd. Liability Co. v. Bd. of County Comm'rs of the County of Teton,* 899 P.2d 1329, 1334–35 (Wyo.1995) (reduced level of operation of a quarry for over 40 years did not constitute abandonment).

[¶ 30] In summary, we conclude as follows: any grandfathered right to have the junkyard in the residential portions of parcels 4 and 6, and the highway business portion of parcel 3 were specifically relinquished and abandoned by Mr. Lawrence in the 1982 Settlement Agreement. The grandfathered right to use parcel 7 in the junkyard business has not been abandoned or discontinued.

*Whether the Appellant has abandoned or discontinued the use as a junkyard of certain areas of her property zoned industrial?*

■ [¶ 31] The answer to this question comes relatively more simply than the answers to the foregoing questions. The City's entire case presented below rested upon the assumption that the concepts of abandonment or discontinuation of a nonconforming use, as enunciated in its ordinances, somehow applied to those portions of the Appellant's property that are zoned industrial. That assumption is just not correct. The junkyard was a conforming use in the industrial zone. Moreover, the district court found, and we agree, that the junkyard use was not

---

9. For each parcel covered by the Settlement Agreement, Mr. Lawrence agreed that he "has no grandfather or pre-existing use rights" therein. If intent to abandon had to be proven outside the existence of the Settlement Agreement, Mr. Lawrence's exclusion of these areas from his 1979 request that the City industrially zone his junkyard certainly would be convincing proof of such intent.

made "illegal," in the zoning sense, by the Appellant's failure to obtain required permits, or her failure to abide by the dictates of the Junkyard Control Act. The junkyard was a legal conforming use in the industrial zone, both before and after the 1989 zoning ordinance adoption.[10] All of parcels 1, 2, 5, and 8 were zoned industrial. The portion of parcel 3 south of parcel 5, and the portions of parcels 4 and 6 south of the residential zone, also were zoned industrial. The Appellant has not abandoned or discontinued her junkyard use in those areas.

## CONCLUSION

[¶ 32] The Appellant's junkyard is a conforming use, as a matter of zoning, in those areas that are zoned industrial: all of parcels 1, 2, 5, and 8, the portion of parcel 3 south of parcel 5, and the portions of parcels 4 and 6 south of the residential zone. The concepts of abandonment or discontinuation of a nonconforming use are not applicable to those areas, and the district court orders must be reversed to the extent that they contradict that conclusion. Pursuant to the 1982 Settlement Agreement, the district court ordered the Appellant to screen parcel 8, and we affirm that order.

[¶ 33] Any grandfathered right for the existence of the junkyard as a nonconforming use in the residential zoned areas in parcels 4 and 6, and the highway business zoned area of parcel 3 was relinquished in the 1982 Settlement Agreement. The junkyard is not a legal nonconforming use in those areas, and the order of the district court to that effect is affirmed. The junkyard is, however, a grandfathered nonconforming use on parcel 7, which use has not been abandoned or discontinued. The order of the district court is reversed to that extent.

[¶ 34] Finally, we will note the following: First, this Court is not called upon to deter-

mine the validity or applicability of the City's "amortization ordinance," because the City did not implement its provisions in this case.[11] Second, this case must be remanded to the district court for a determination of the Appellant's particular obligations, as well as the obligations of the Transportation Commission of Wyoming, under the Junkyard Control Act.

[¶ 35] Affirmed in part, reversed in part, and remanded to the district court for further proceedings consistent herewith.

---

10. The Appellant testified that the purpose behind the 1979 zone change request was to *return* the junkyard to its former industrial status. The record is not clear in this regard; the Appellant testified that "[i]t was industrial when we bought it, and we asked that it be returned to industrial." If the City's first zoning ordinance was passed in 1973, and the property was purchased before that date, we can only assume that the

area at the time of purchase was industrial as a matter of fact, rather than as a matter of zoning.

11. The Rawlins Municipal Code § 19.52.020 requires the termination or relocation of certain non-conforming uses, based upon a schedule determined by the value of the business. *See* 83 Am.Jur.2d *Zoning and Planning* §§ 621-24 (2003).